Argued and submitted October 4, 1982, reversed and remanded March 20, petition for rehearing denied May 1, 1984

# CHRISTENSEN,
*Petitioner on Review,*

*v.*

# MURPHY,
*Respondent on Review.*

(TC 14561, CA A20590, SC 28701)

678 P2d 1210

W. Eugene Hallman, Pendleton, argued the cause for petitioner on review. With him on the briefs were Mautz, Hallman and Teicher, Pendleton, and Pippin and Bocci, Portland.

Douglass M. Hamilton, Portland, argued the cause for respondent on review. With him on the response and brief were I. Franklin Hunsaker, and Bullivant, Wright, Leedy, Johnson, Pendergrass and Hoffman, Portland.

Darrell E. Bewley, Salem, filed a brief of Amicus Curiae in the Court of Appeals in behalf of State Accident Insurance Fund.

Will Aitchison, of Aitchison and Sherwood, Portland, filed a brief of Amicus Curiae in the Supreme Court in behalf of Oregon Council of Police Associations.

Before Justices Linde, Peterson**, Tanzer***, Campbell and Carson.

CARSON, J.

---

** Justice Lent was Chief Justice when case argued; Justice Peterson was Chief Justice when decision rendered.

*** Tanzer, J. resigned December 31, 1982.

## CARSON, J.

Plaintiff's decedent, a police officer, was killed in the course of his duties allegedly as the direct result of defendant's negligence. The trial court, however, held that plaintiff's wrongful death claim against defendant was barred by the "fireman's rule."[1] In so doing the trial court applied the "fireman's rule" to a police officer (*see Cullivan v. Leston,* 43 Or App 361, 602 P2d 1121 (1979), *rev den* 288 Or 527 (1980)) and extended it to bar recovery for injuries suffered away from the premises where the negligence allegedly occurred.[2] The Court of Appeals affirmed. *Christensen v. Murphy,* 57 Or App 330, 644 P2d 627 (1982).

█ █ We accepted review to determine whether the "fireman's rule" should be extended to off-premises injuries suffered by a police officer who encounters a situation allegedly created by defendant's negligence. As a general rule, parties to an appeal are restricted to the questions raised and preserved in the trial court. *Travelers Indemn. v. American Ins.,* 278 Or 193, 199, 563 P2d 684 (1977). However, having granted review on the issue of the extension of the "fireman's rule," we are compelled to examine any extension of the rule in light of the law as it existed at the time it was argued in the trial court, including legislative changes and caselaw interpreting the changes. The effect of the statutory change on the rule was discussed in the petition to this court and the response thereto and argued to this court by both parties. Upon examining the basis of the "fireman's rule," we conclude that an extension is inappropriate and the rule, itself, is not supportable as a rule of Oregon tort law. Thus, we hold that plaintiff's claim is not barred on these facts.

█ █ The judgment appealed from is based on an order granting defendant's motion for summary judgment. The

---

[1] "* * * [A]n owner or occupier is not liable to a paid fireman for negligence with respect to creating a fire." *Spencer v. B.P. John Furniture Corp.,* 255 Or 359, 362, 467 P2d 429 (1970).

[2] In the trial court, plaintiff acknowledged the existence of the "fireman's rule" in Oregon, but argued that it should not be extended to bar recovery for off-premises injuries suffered by a police officer who encounters a situation allegedly created by defendant's negligence. In her Reply Brief to the Court of Appeals, plaintiff first raised the effect on the rule of the 1975 legislative abolition of the doctrine of implied assumption of risk, ORS 18.475(2), which provides:

"The doctrine of implied assumption of the risk is abolished."

entry of summary judgment is proper only where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. ORCP 47 C. Where plaintiff has cited the granting of the motion as error, the record must be viewed in the light most favorable to her. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 655, 576 P2d 356 (1978).

On February 16, 1976, defendant, a night matron at the Northwest Regional Youth Center in Pendleton, permitted Daryl Thompson to enter the facility. Once inside, Thompson forced defendant to release Jeanne Nobel, a minor in custody there. Thompson and Nobel then fled to an automobile a short distance away. Thompson, however, had difficulty getting the automobile started. By coincidence, Pendleton Police Officer John Christensen, plaintiff's decedent, drove by while on duty. Without knowing of the recent escape, Christensen stopped and began to assist Thompson in starting the automobile. Nobel became nervous and fled, yelling to Thompson to "run." Christensen ran after Nobel and tackled her about 20 yards from the car. Thompson followed after the pair and, in his struggle to free Nobel, fatally stabbed Christensen.

Plaintiff alleges that defendant was negligent in several particulars[3] and that such negligence was the cause of her decedent's death. In an earlier decision by this court the threshold question of whether plaintiff's complaint stated a claim for negligence against defendant was decided. In *Christensen v. Epley* (hereinafter, "Christensen I"), 36 Or App 535,

---

[3] In her third amended complaint, plaintiff alleged that defendant was negligent in one or more of the following ways:

"1. In allowing defendant Daryl Thompson to enter the Northeast Oregon Regional Youth Center after visiting hours in disregard of the rules of the Northeast Oregon Regional Youth Center.

"2. In failing to alert police officers that an unauthorized person was in the Northeast Oregon Regional Youth Center.

"3. In failing to properly supervise the activities and conduct of defendant Daryl Thompson and the female juvenile while in the Northeast Oregon Regional Youth Center.

"4. In allowing defendant Daryl Thompson and the female juvenile to escape from the Northeast Oregon Regional Youth Center.

"5. In failing to alert police officers to the whereabouts of defendant Daryl Thompson although she was aware that defendant Daryl Thompson had run away from home in violation of a prior juvenile court order."

585 P2d 416 (1978), *aff'd in part by an evenly divided court, rev'd in part* 287 Or 539, 601 P2d 1216 (1979), this court, by an evenly divided vote,[4] affirmed that part of the Court of Appeals decision which held that the trial court erred in entering judgment on demurrer for defendant because plaintiff's complaint did state a claim for negligence against defendant. In *Christensen I,* the Court of Appeals held that plaintiff's complaint alleged sufficient facts to establish a legal duty owed Christensen by Murphy to take reasonable care to prevent escape and, upon escape, to alert the police. The Court of Appeals further held that the causal link between defendant's allegedly negligent conduct and Christensen's death was sufficiently alleged to survive demurrer and also that the intervening criminal act of Thompson was not a superseding cause of Christensen's death. The Court of Appeals then held that the issue of foreseeability presented a jury question. Because the question of legal duty has been decided in *Christensen I,* we will not reconsider it here.

The question this case presents is whether, notwithstanding any negligence on defendant's part which may have caused Christensen's death, plaintiff is barred from recovery because Christensen was a police officer acting within the scope of his duties when his death occurred.

Before deciding the present case, it is helpful to review the history of the "fireman's rule" in Oregon. *Spencer v. B.P. John Furniture Corp.,* 255 Or 359, 467 P2d 429 (1970), was the first and, until now, the only case in which this court decided the application of the "fireman's rule."[5] The facts

---

[4] Because this court was evenly divided on the issue, a majority decided that no opinion would be written on that question. However, three separate opinions, concurring in full or in part, were filed. *Christensen v. Epley,* 287 Or 539, 601 P2d 1216 (1979).

[5] The "fireman's rule" has engendered considerable commentary. For recent extended discussions of the rule and its history, *see Lipson, v. Superior Court of Orange County,* 31 Cal 3d 362, 182 Cal Rptr 629, 644 P2d 822 (1982); *Armstrong v. Mailand,* 284 NW2d 343, 11 ALR4th 583 (Minn 1979); *Court v. Grzelinski,* 72 Ill 2d 141, 19 Ill Dec 617, 379 NE2d 281 (1978); *Walters v. Sloan,* 20 Cal 3d 199, 142 Cal Rptr 152, 571 P2d 609 (1977); Note, *Assumption of the Risk and the Fireman's Rule,* 7 Wm Mitchell L Rev 749 (1981); Comment, *Negligence Actions by Police Officers and Firefighters: A Need for a Professional Rescuers Rule,* 66 Cal L Rev 585 (1978); Note, *Walters v. Sloan: Policemen "Burned" by Firemen's Rule,* 5 West State U L Rev 235 (1978); Note, *Landowner's Liability to Injured Firefighters in Illinois,* 27 DePaul L Rev 137 (1977); Comment, *An Examination of the California Fireman's Rule,* 6 Pac L J 660 (1975); Comment, *The Fireman's Rule in California: an Anachronism?,* 4 USF L

there presented the issue in its prototypical form: The decedent was a paid member of a public fire department who was called to fight a fire on the defendant's premises that had allegedly been caused by the defendant's negligence. The decedent was fatally injured while fighting that fire by an explosion caused by an accumulation of dust in the premises. The explosion was found to be a risk naturally inherent in such a fire, and the court observed, as a statement of the "fireman's rule," that:

> "[t]he authorities are almost unanimous to the effect that an owner or occupier is not liable to a paid fireman for negligence with respect to creating a fire." 255 Or at 362.

The result in *Spencer* — the plaintiff's claim in negligence against the owner of the premises was barred — was consistent with the weight of authority. In *Spencer,* this court dismissed traditional premises liability analysis, which early decisions in other jurisdictions had employed, and stated that a fire fighter enters a premises as a matter of right pursuant to his public employment. "Therefore, such classifications as trespasser, licensee, or invitee are irrelevant to owners' or possessors' duty to firemen." *Spencer v. B.P. John Furniture Corp., supra,* 255 Or at 362. The opinion quoted with approval from *Krauth v. Geller,* 31 NJ 270, 157 A2d 129, 130-31 (1960), wherein Weintraub, C.J., explained the basis of the "fireman's rule" as assumption of risk and as a policy decision:

> "* * * The rationale for the prevailing rule is sometimes stated in terms of 'assumption of risk,' used doubtless in the so-called 'primary' sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. [Citation omitted.] Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the

Rev 125 (1969); Annot., *Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of his Duty,* 11 ALR4th 597 (1982).

final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling [citing cases]." 255 Or at 362-63.

This court in *Spencer* then held:

"* * * We agree for the reasons set forth in the quotation from *Krauth* that there should be no liability on the part of a possessor or owner of the premises to paid firemen for injuries from negligently caused fires." 255 Or at 364.

We further held, however, that a fire fighter does not assume all risks encountered in fighting fires. He or she has a right to expect that the owner or possessor of premises will not imprudently permit an unusual, serious *hidden* danger of a totally unexpected kind. *Id* at 365.

"A measure of protection resulting from training and experience can be taken against apparent, known, or to-be-anticipated risks. However, a fireman is completely vulnerable to such a hidden danger as described above, and we see nothing in the lack-of-duty concept of assumption of risk or in public policy which precludes him from having a cause of action in such circumstances." *Id.*

Because the defendant in *Spencer* was the premises' owner and because most fires occur on premises, the holding was understandably limited to "owners or possessors" of premises. However, the reasoning of this court in *Spencer* clearly was not based on premises liability analysis, but on assumption of risk and policy rationales.[6]

---

[6] The only other Oregon appellate case concerning the "fireman's rule" is *Cullivan v. Leston,* 43 Or App 361, 602 P2d 1121 (1979), *rev den* 288 Or 527 (1980). *Cullivan* extended the coverage of the "fireman's rule" to paid public police officers. The essential factual elements in *Cullivan* tracked those of *Spencer:* The plaintiff police officer entered the defendant's premises (a tavern) in the course of his duties, for the purpose of attempting to break up a fight allegedly caused by the defendant's negligence in serving alcohol to visibly intoxicated patrons. The plaintiff was injured when he was assaulted by friends of the brawling patrons. This injury was judged a result of risks inherent in the situation. The Court of Appeals held that, for the reasons stated in *Spencer,* the plaintiff's injury was a normal risk of carrying out his official duties and the plaintiff was barred from recovery from the defendant in negligence. The court did not consider the 1975 enactment of ORS 18.475(2) which abolished implied assumption of risk.

■■    Before reaching the question of the extension of the "fireman's rule" in this state to off-premises injuries, we are compelled to examine its very existence as a rule of tort law in Oregon.[7] As noted above, the rationale of the rule accepted in *Spencer* was not premises liability, but assumption of risk and policy considerations. For purposes of the "fireman's rule," assumption of risk is not used in the sense of "express" assumption of risk, where parties contract with each other that one accepts the risk of harm which is incident to the other's conduct, within the scope of the parties' relationship. *See* Restatement (2nd) of Torts § 496 B.; Prosser, Law of Torts § 68, 442-45 (4th ed 1971). In "express" assumption of risk situations, one party expressly and prospectively exonerates the other for any injuries the latter negligently may cause; or, stated differently, the former expressly limits the latter's duty of care towards him or her.

■    The rationale for the "fireman's rule" in Oregon has been "implied" assumption of risk in the "primary," as opposed to the "secondary," sense of the phrase. This meant that no duty was owed to exercise care to avoid the necessity of the special services of a paid public safety officer, not that the officer was guilty of contributory fault in responding to his or

---

[7] Some jurisdictions have expanded the "fireman's rule" to encompass a "professional rescuer's rule" which bars certain types of negligence actions by the rescuer irrespective of that person's status as a public employee or of where the injury occurs. This doctrine apparently originated in *Maltman v. Sauer*, 84 Wash 2d 975, 530 P2d 254 (1975), which dealt with an action by the estates of the crew of an Army helicopter that crashed en route to the scene of an automobile accident allegedly caused by the defendant's negligence. The Washington court there stated:

"* * * We conclude that the proper test for determining a professional rescuer's right to recover under the 'rescue doctrine' is whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity. Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of the negligence which created the actual necessity for exposure to *those* hazards. When the injury is the result of a hazard generally recognized as being within the scope of dangers identified with the particular rescue operation, the doctrine will be unavailable to that plaintiff." 530 P2d at 257.

*See also Gillespie v. Washington,* 395 A2d 18 (DC Ct App 1978) (harbor patrol officer injured uprighting defendant's boat); *Black Industries, Inc. v. Emco Helicopters, Inc.,* 19 Wash App 697, 577 P2d 610 (1978) (helicopter crash while fighting forest fire); Comment, *Negligence Actions by Police Officers and Firefighters: A Need for a Professional Rescuers Rule, supra* n 5.

her duty. *Spencer v. B.P. John Furniture Corp., supra,* 255 Or at 362. In contrast to "secondary" assumption of risk, which is a variant of contributory fault, "primary" is a derivative of "express" assumption of risk. That is, due to the nature of the parties' relationship, it was implied, despite the lack of any express agreement, that the plaintiff disclaimed or waived the duty of care the defendant might otherwise owe to him or her.

Implied assumption of risk in both primary and secondary forms statutorily has been abolished in this state since 1975, and thus it can no longer serve as an absolute bar to a plaintiff's recovery.[8] ORS 18.475(2); *Blair v. Mt. Hood Meadows Development Corp.,* 291 Or 293, 300, 630 P2d 827 (1981); *Thompson v. Weaver,* 277 Or 299, 560 P2d 620 (1977). That fact requires us to reexamine the "fireman's rule" to determine whether we can still hold that a fire fighter or police officer assumes the risk of another's negligence to the point of absolutely barring a public safety officer from recovering in a negligence action.

In *Blair v. Mt. Hood Meadows Development Corp., supra,* we discussed primary implied assumption of risk in light of ORS 18.475(2). The issue there was whether the plaintiff could recover for injuries received in the course of an inherently dangerous sporting activity, downhill skiing, in which he had voluntarily chosen to engage. Formerly, such a fact situation was analyzed under primary implied assumption of risk. *See Whipple v. Salvation Army,* 261 Or 453, 495 P2d 739 (1972) (tackle football). *Blair* makes clear, however, that it is really a question of whether negligence in fact occurred:

"* * * Thus, the fact that a sport participant's injury results from a risk which is an element of the sport even when properly conducted may continue to defeat recovery for negligence because the defendant's duty in the context of the sport may not extend to protecting against such risks." 291 Or at 302.

■ In *Blair,* we noted that the same facts which formerly were analyzed under the doctrine of implied assumption of

---

[8] Oregon law differs significantly from California and Minnesota where only the secondary, not the primary, form of implied assumption of risk has been abolished. For this reason, the California and Minnesota cases upholding the "fireman's rule," upon which defendant relies, are inapposite. *See, e.g., Li v. Yellow Cab Co. of California,* 13 Cal 3d 804, 119 Cal Rptr 858, 532 P2d 1226 (1975); *Armstrong v. Mailand,* 284 NW2d 343 (Minn 1979).

risk are still relevant in reducing or eliminating recovery for negligence. A defendant may still have a complete defense to liability for negligence, independent of the now eliminated doctrine of implied assumption of risk, if, apart from the plaintiff's conduct, the plaintiff cannot establish that the defendant breached a duty owed in the circumstances, or if the defendant can show that the plaintiff's contributory fault was greater. However, "[ORS 18.475(2)] cannot be circumvented by restating as an absence of duty what was previously implied assumption of the risk." *Thompson v. Weaver, supra,* 277 Or at 305.

When we thus reexamine the "fireman's rule," we find that its major theoretical underpinning is gone. Therefore, because the rule is not sustainable under implied assumption of risk analysis, we must determine if any other supportable theory under the general rubric of "policy" will provide the foundation for the rule. The most often cited policy considerations include: 1) To avoid placing too heavy a burden on premises owners to keep their premises safe from the unpredictable entrance of fire fighters; 2) To spread the risk of fire fighters' injuries to the public through workers' compensation, salary and fringe benefits; 3) To encourage the public to call for professional help and not rely on self-help in emergency situations; 4) To avoid increased litigation. *See Walters v. Sloan,* 20 Cal 3rd 199, 142 Cal Rptr 152, 571 P2d 609 (1977); Prosser, Law of Torts, *supra* at 397.

Frequently, the so-called policy reasons are merely redraped arguments drawn from premises liability or implied assumption of risk, neither of which are now available as legal foundations in this state. For example, policy consideration "1" above focuses on the fire fighter as a class from whom the premises owner needs immunity (akin to a licensee or trespasser), not on the reasonableness of the activity of the premises owner in the circumstances. Thus, it can be seen that the unusual hazard or hidden danger exception to the "fireman's rule" (allowing the fire fighter to recover under the old premises liability or the new foreseeability tests), discloses not a governmental policy concerning conduct of a landowner but a veiled form of assumption of risk analysis — usually characterized in language indicating that the fire fighter "* * * does not assume such risks." *Spencer v. B.P. John Furniture Co., supra,* 255 Or at 365.

■　　　　The remaining policy arguments are equally flawed. The weakness in the loss-spreading rationale, "2" above, is obvious. By denying a public safety officer recovery from a negligent tortfeasor, the officer is not directed to recover his damages from the general public; rather the officer is totally precluded from recovering these damages from anyone. Contrast this with other public employees who are injured when confronting dangers on their jobs. The latter can recover workers' compensation and salary benefits from the public, but are also allowed additional tort damages from the third-party tort-feasors. Under the "fireman's rule" the injured public safety officer must bear a loss which other public employes are not required to bear.[9] Furthermore, this court previously has rejected loss-spreading as the sole rationale for recovery in products liability cases because we recognized that the logical extension of risk spreading would lead to absurd lengths. *Markle v. Mulholland's, Inc.*, 265 Or 259, 266, 509 P2d 529 (1973).

As for "3" above, Dean Prosser criticized as "preposterous rubbish" the argument offered to defend the "fireman's rule" that tort liability might deter landowners from uttering cries of distress in emergency situations. Prosser, Law of Torts, *supra* at 397. We agree. Furthermore, we have previously rejected "4" above, avoidance of increased litigation, as a ground for denying substantive liability. *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 552, 652 P2d 318 (1982). In fact, the "fireman's rule" has come under attack recently on several fronts.[10]

■　■　　　　As a result of statutory abolition of implied assumption of risk, we hold that the "fireman's rule" is abolished in Oregon as a rule of law and no longer can bar recovery of damages for personal injuries sustained by a public safety officer, in the course of his or her employment, as a

---

[9] *See, e.g.,* discussions in *Walters v. Sloan, supra,* n 5 (Tobriner, J., dissenting) and *Berko v. Freda,* 93 NJ 81, 459 A2d 663 (1983)(Handler, J., dissenting).

[10] *See, e.g.,* Comment, *The Fireman's Rule in California: an Anachronism? supra,* n 5, and Note, *Assumption of the Risk and the Fireman's Rule, supra,* n 5. In New Jersey, the birth state of the seminal case (*Krauth v. Geller,* 31 NJ 270, 157 A2d 129 (1960)), upon which we relied to enunciate the "fireman's rule," the rule has recently come under attack. In a 4-2 decision upholding the rule, the dissent by Handler, J., states that the "fireman's rule" is unsupportable on policy grounds. *Berko v. Freda, supra,* n 9.

result of a defendant's negligent conduct.[11] We thus expressly overrule the holding in *Spencer v. B.P. John Furniture Corp., supra.* This case is remanded to the trial court for further proceedings in accordance with this opinion.

Reversed and remanded.

---

[11] The proper analysis of recovery by public safety officers for negligently caused injuries is shifted from the officers' implied assumption of risks inherent in their occupations, to the defendant's duty in the circumstances. The inquiry thus should be in each case: Did the defendant breach a legal duty causing the plaintiff's injury? As noted earlier, this court effectively found that a legal duty was owed to Christensen by Murphy to take reasonable care to prevent escape and, upon escape, to alert the police. *Christensen I,* 36 Or App 535, 585 P2d 416 (1978), *aff'd in part by an evenly divided court, rev'd in part* 287 Or 539, 601 P2d 1216 (1979). This shift in analysis does not mean, of course, that every home or premises owner will be liable to every public safety officer for his or her injuries. As we said in *Blair v. Mt. Hood Meadows Development Corp.,* 291 Or 293, 300, 630 P2d 827 (1981), the question is whether actionable negligence, in fact, occurred. A defendant's duty may not extend to protecting against certain risks. Furthermore, where a plaintiff fails to act reasonably under the circumstances, his or her recovery will be diminished under the statutory mandate of comparative fault analysis. ORS 18.470.