HERMINIO SOTO RIVERA ET AL., demandantes y recurridos, *v.* TROPIGAS DE PUERTO RICO, INC., ET AL., demandados y peticionarios.

*Número:* CE-86-71      *Resuelto:* 4 de diciembre de 1986

*Carlos Martínez Texidor,* abogado de los peticionarios.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

El 10 de diciembre de 1968, el bombero estatal Sgto. Herminio Soto Rivera sufrió lesiones durante un incendio originado dentro de las instalaciones de Tropigas de Puerto Rico, Inc., situadas en Caguas en ocasión de explotar un camión, cuyo contenido de gas era descargado de un tanque motriz, cuando Soto Rivera y otros compañeros acudieron a extinguirlo. [1]

Como resultado, recibió tratamiento bajo el Fondo del Seguro del Estado hasta junio de 1985. Subsiguientemente, en unión a su esposa Felícita Fuentes e hijos, en su carácter individual y a nombre de la sociedad de gananciales Soto-Fuentes demandaron en daños y perjuicios a Tropigas. Ésta

---

[1] En autos existe una declaración prestada por Soto Rivera ante un investigador del Fondo del Seguro del Estado. En lo pertinente declaró:

"Yo puse al personal en alerta y salimos hacia la Tropigas. La primera bomba era conducida por Ezequiel Medina. De lejos se veía que el fuego era grande y cuando llegamos al lugar, sabíamos que allí había fuego pero no sabíamos qu[é] era lo que se quemaba. Se oían ruidos fuertísimos, aquello era un infierno. Al prepararse para bajar el equipo de la bomba, los bomberos Juan J. Rivera y Víctor Fernando dijeron gritando 'vámonos de aquí que esto explota ya mismo'. Empezaron a correr y yo le dije al chofer Ezequiel Medina que prendiera la bomba y nos fuimos. El caliente [*sic*] que se sentía era terrible. Al ir ya como a 300 pies de distancia hacia la salida de Aguas Buenas, explotó un *camión* que estaba cargado de gas. Yo iba en la bomba con Ezequiel Medina y noté que la bomba iba directo a un árbol y cuando miré al volante el chofer no estaba y yo me cambié de sitio y continué guiando la bomba. Más arriba de la planta Tropigas viré hacia la planta nuevamente y me encontré con el bombero Carlos Rivera Robles que estaba con el jefe Melecio que se encontraba mutilado y con conocimiento. Con la explosión perdió la ropa y estaba destrozado, lo subimos a la bomba y lo sentamos." *Exhibit* F, págs. 21–22.

solicitó la desestimación sumaria de la demanda. Levantó la defensa de prescripción en torno a la acción de la esposa, la sociedad legal de gananciales e hijos mayores de edad. A tal efecto invocó la norma expuesta en *Franco v. Mayagüez Building, Inc.*, 108 D.P.R. 192 (1978), según la cual el término prescriptivo se interrumpe únicamente en cuanto al obrero lesionado cuando éste recibe tratamiento bajo el Fondo del Seguro del Estado. 11 L.P.R.A. sec. 32. Respecto a la causa de acción de Soto Rivera y sus hijos, sostuvo que consideraciones de orden público impedían su ejercicio. Adujo la aplicabilidad de la doctrina de "asunción de riesgo" (*assumption of risk*), por razón de que los daños acaecidos se originan por su condición de bombero en el descargo de su función pública.

El Tribunal Superior, Sala de Caguas, desestimó la acción de la Sra. Felícita Fuentes y la sociedad de gananciales. Se negó en cuanto a los restantes. Ante nos, Tropigas reitera su pedido bajo la doctrina de asunción de riesgo y su planteamiento de que la acción es contraria al interés público. Acordamos revisar.

## II

La doctrina de asunción de riesgo está enraizada en el pensamiento de Derecho común que refiere el concepto de "riesgo" a una relación libremente contraída entre el demandante y el demandado, por lo que se "limita" la responsabilidad de este último hacia el primero. F. James, *Assumption of Risk*, 61 Yale L.J. 141, 142 (1952). Su trayectoria histórica refleja que la casuística la creó como defensa para proteger la industria en desarrollo, de los altos costos de compensar a los empleados por los daños que sufrieran en el curso del empleo. El razonamiento seguido enfocaba el acuerdo voluntario contraído por el empleado para su beneficio. Se pensaba que permitir una demanda contra el demandado en tales circunstancias atentaba contra la libertad de contratación. Así,

esta doctrina se concibió como una "norma de política pública". *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U.S. 54, 58–59 (4to Cir. 1943). Véase R. Pound, *The Economic Interpretation and the Law of Torts*, 53 Harv. L. Rev. 365, 373 (1940).

■ En nuestra jurisdicción hemos incorporado esta figura en su doble acepción: (1) *primaria* —la que nos ocupa, donde existe un deber limitado de cuidado por el demandado, y (2) *secundaria* —que propiamente se configura como una manifestación de negligencia comparada. *Viñas* v. *Pueblo Supermarket*, 86 D.P.R. 33, 36 y ss. (1962); *Palmer* v. *Barreras*, 73 D.P.R. 278 (1952); *Echevarría* v. *Despiau*, 72 D.P.R. 472 (1951). Véase también *Colón* v. *Municipio de Orocovis*, 100 D.P.R. 1009, 1013 (1972).

Esta perspectiva es importante. En lo posible, en la solución de la controversia, debemos atender la génesis y el desarrollo de la figura de asunción de riesgo en el derecho anglosajón —*Dávila* v. *Agrait*, 116 D.P.R. 549 (1985)— con el debido respeto a nuestra tradición civilista. *Valle* v. *Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 697 (1979).

### III

En la jurisdicción norteamericana no existe consenso entre las autoridades respecto al *status* del bombero que se adentra en la propiedad privada en el descargo de su función pública y la posibilidad de que pueda exigir responsabilidad civil al propietario u ocupante de la misma por los daños causados por su negligencia.

■ Bajo distintos enfoques casuísticos se desarrolló la norma aplicable en casos de bomberos (*Fireman's Rule*).(²)

---

(²) Sus orígenes se remontan a Inglaterra. Tenía como justificación el sitial especial que, por su importancia económica, se le atribuía al propietario, "dueño y señor" de sus predios. Sisson, *"The Fireman's Rule": Open*

En síntesis, la misma "impide reclamaciones de bomberos . . . contra aquellas personas cuya negligencia o descuido causa el incendio u otro peligro que les ocasiona daños. Tres razones fundamentales sostienen la regla. La primera está basada en el principio de asunción de riesgo, en virtud de la cual el daño no es recobrable cuando el funcionario voluntariamente confronta un peligro en particular. La segunda, se deriva de los deberes que el funcionario asume o riesgos predecibles del trabajo. La tercera es la distribución del costo (*cost-spreading rationale*), bajo la cual no es recobrable la indemnización por la disponibilidad de un esquema legislativo de compensación. Junto con estos fundamentos, la regla sólo impide acciones por daños causados por la mala conducta que movió al funcionario a presentarse en la escena. Un daño que ocurre independientemente de la mala conducta por la cual el funcionario es responsable, está fuera del ámbito de la regla, y éste podrá proceder a reclamar en daños". (Traducción nuestra y escolios omitidos.) B. K. Riley, *The Fireman's Rule: Defining Its Scope Using the Cost-Spreading Rationale*, 71 Calif. L. Rev. 218 (1983).

Originalmente, algunas jurisdicciones consideraban al bombero un mero "concesionario" (*licensee*), un "invitado" (*invitee*) o "invasor" (*trespasser*).(³) La responsabilidad en daños del propietario dependía del *status* del lesionado. Nota, *Hubbard* v. *Boelt: The Fireman's Rule Extended*, 9 Pepperdine L. Rev. 197, 199–201 (1981). Estas categorías tradicionales, de ordinario, imposibilitan el ejercicio de una causa de acción en daños. Otro sector minoritario las repudia confiriéndole al bombero un *status* sui géneris que le permitiría ejercitar su causa de acción. *Assumption of the Risk and the*

---

*Season on Firemen and Policemen*, 14 U. West L.A. L. Rev. 89 (1982). En Estados Unidos el primer caso que sostuvo la norma fue *Gibson* v. *Leonard*, 32 N.E. 182 (Ill. 1892).

(³) Sobre los desarrollos de estas figuras, véase *Gierbolini* v. *Employers Fire Ins. Co.*, 104 D.P.R. 853, 855–856 (1976).

*Firemen's Rule*, 7 W. Mitchell L. Rev. 749, 754–755 (1981). La jurisprudencia es tan profusa como divergente. *Louisville & N.R. Co.* v. *Griswold*, 1 So. 2d 393, 395 (Ala. 1941) ; *Hall* v. *Holton*, 330 So. 2d 81, 82 (Fla. 1976) ; *Nared* v. *School Dist. of Omaha in Cty. of Douglas*, 215 N.W.2d 115, 117–118 (Neb. 1974) ; *Pallikan* v. *Mark*, 322 N.E.2d 398, 399–400 (Ind. 1975) ; *Strong* v. *Seattle Stevedore*, 466 P.2d 545, 548–549 (Wash. 1970) ; *Roberts* v. *Rosenblatt*, 148 A.2d 142, 144 (Conn. 1959) ; *Baxley* v. *Williams Construction Company*, 106 S.E.2d 799, 805 (Ga. 1958) ; *Nastasio* v. *Cinnamon*, 295 S.W.2d 117, 121 (Mo. 1956) ; *Scheurer* v. *Trustees of Open Bible Church*, 192 N.E.2d 38, 41 (Ohio 1963) ; *McDaniel* v. *The Lisholt*, 155 F. Supp. 619, 627 (N.Y. 1957) ; *Aldworth* v. *F. W. Woolworth*, 3 N.E.2d 1008, 1009 (Mass. 1936) ; *Dini* v. *Naiditch*, 170 N.E.2d 881, 885–886 (Ill. 1960) ; *Frentress* v. *Co-operative Refinery Ass'n*, 31 N.W.2d 225, 227 (Neb. 1948). Véase N. S. Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers*, 69 L. Q. Rev. 182, 359 (1953).

La regla emergente en casos de bomberos (*Fireman's Rule*) expositiva de que un bombero a sueldo no tiene acción contra aquél cuya negligencia pasiva causó el fuego en el que éste sufrió daños, continúa vigente en muchos estados. *Krauth* v. *Geller*, 157 A.2d 129, 130 (N. J. 1960) ; *Garcia* v. *City of South Tucson*, 640 P.2d 1117, 1120 (Ariz. 1981) ; *Grable* v. *Varela*, 564 P.2d 911, 912 (Ariz. 1977) ; *Armstrong* v. *Mailand*, 11 A.L.R.4th 583, 284 N.W.2d 343, 349–350 (Minn. 1979) ; *Court* v. *Grzelinski*, 379 N.E.2d 281, 283 (Ill. 1978). R. D. Zimmerman, *Negligence Actions by Police Officers and Firefighters: A Need for a Professional Rescuers Rule*, 66 Calif. L. Rev. 585 (1978).

*Krauth* v. *Geller*, supra, págs. 130–131, expone *in extenso* la norma de política pública medular sobre la cual descansa:

La razón fundamental de la regla prevaleciente se expresa a veces en términos de "asunción de riesgo", vocablo induda-

blemente utilizado en el llamado sentido "primario", y que significa que el demandado no incumplió un deber exigible, sino que el bombero fue responsable por su culpa contribuyente al responder a su deber público. . . . *Afirmativamente expuesto, esto quiere decir que la ocupación del bombero es enfrentarse al peligro que representa el incendio y por eso, quizás por analogía con el contratista empleado como experto para remediar situaciones peligrosas*, no puede quejarse de negligencia en la creación del mismo acontecimiento al que se dedica. En términos del deber, puede decirse que no se tiene la obligación con el bombero de ejercer un cuidado tal, que equivalga a no tener que requerirle los servicios especiales por los cuales se le adiestra y se le paga. *Probablemente la mayoría de los incendios son atribuibles a negligencia, y en el análisis final se adopta la política de que sería muy gravoso responsabilizar a todos los que descuidadamente causan u omiten prevenir incendios, por las heridas que sufre el experto sufragados con fondos públicos para enfrentarse a aquellos incidentes que a pesar de ser creados por negligencia, son inevitables.* Por ende, dado al riesgo, el bombero debe recibir una compensación apropiada de parte del público al que sirve, que consista en un sueldo que refleje el peligro existente, y en los beneficios de compensación al trabajador disponibles ante las consecuencias de los riesgos inherentes a la profesión. (Énfasis suplido, traducción nuestra y citas omitidas.)

Esta doctrina recientemente ha estado sujeta a cambios. Algunas jurisdicciones, judicial o legislativamente, la han abandonado. Nota, *Oregon Abolishes the Fireman's Rule— Christensen* v. *Murphy*, XIX Suffolk U.L. Rev. 957 (1985). La nueva tendencia recalca que, por excepción, el dueño del predio de terreno puede ser responsable del bombero: (1) si su negligencia intencional o temeraria es la causa próxima del daño; (2) cuando el daño fue previsto y su negligencia fue "activa", o (3) cuando la negligencia se deriva del incumplimiento de un deber estatutario impuesto para la protección de terceros. Bajo este enfoque, el "deber de cuidado" del propietario se extiende a peligros ocultos e imprevisibles, descono-

cidos y que no pueden ser observados por un bombero cuando éste ejerce un cuidado ordinario y el dueño no le advierte oportunamente. Se distingue también aquella situación en que el bombero sufre daños como consecuencia de riesgos independientes al descargo de su función. Riley, *op. cit.* Se arguye que en tal situación el bombero hubiese sufrido el daño indistintamente de estar atendiendo la emergencia en cuestión. *Christensen* v. *Murphy,* 678 P.2d 1210, 1217–1218 (1984); *Lipson* v. *Superior Court of Orange County,* 644 P.2d 822, 826–829 (Cal. 1982); *Ferraro* v. *Demetrakis,* 400 A.2d 1227, 1229 (N.J. 1979); *Thompson* v. *Warehouse Corp. of America, Inc.,* 337 So.2d 572, 573 (La. 1976); *Whitten* v. *Miami–Dade Water & Sewer Auth.,* 357 So.2d 430, 432 (Fla. 1978); *Sherman* v. *Suburban Trust Co.,* 384 A.2d 76, 80–81 (Md. 1978); *Buchanan* v. *Pickett & Son, Inc.,* 279 N.W.2d 855, 856–857 (Neb. 1979); *Washington* v. *Atlantic Richfield Co.,* 361 N.E.2d 282, 283–284 (Ill. 1977); *Walsh* v. *Madison Park Properties, Ltd.,* 245 A.2d 512, 515 (N.J. 1968); *Horcher* v. *Guerin,* 236 N.E.2d 576, 578–580 (Ill. 1968); *Romedy* v. *Johnston,* 193 So.2d 487, 490–491 (Fla. 1967); véanse: *Zimmerman, op. cit.,* págs. 595–609; Comentario, *Contractual Exculpation from Tort Liability in California—The "True Rule" Steps Forward,* 52 Calif. L. Rev. 350 (1964).

Al reflexionar sobre el valor persuasivo de las distintas avenidas disponibles, percibimos que el fundamento de política pública apuntalado en la naturaleza peligrosa de la ocupación y la distribución del costo son los más sólidos. Éstos reconocen el carácter inherentemente riesgoso de tales labores y que la existencia de la regla (*Fireman's Rule*) está inextricablemente vinculada al esquema legislativo de beneficios de salario, pensión por incapacidad y muerte a que son acreedores particularmente los bomberos por daños ocurridos en el ejercicio de sus funciones. *Krauth* v. *Geller,* supra. "[L]a regla está basada en una decisión de política pública de satisfacer las obligaciones del público con sus funcionarios colec-

tivamente a través de una indemnización sostenida mediante contribuciones, en lugar de compensaciones individuales mediante acciones en daños y perjuicios." (Traducción nuestra.) Riley, *op. cit.*, págs. 235–236.

Puerto Rico recoge esa visión. Adicionalmente a los pagos dispuestos en la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*, los bomberos y un número limitado de otros funcionarios([4]) son acreedores a los beneficios de una pensión especial por incapacidad o muerte en virtud de la Ley Núm. 127 de 27 de junio de 1958, según enmendada, 25 L.P.R.A. sec. 376 *et seq.* Este estatuto representa un reconocimiento implícito del Poder Legislativo a los riesgos peculiares o inherentes que el desempeño de esa ocupación implica. Se parte de la premisa de que la profesión es per se peligrosa y que el bombero ha sido entrenado para afrontar tales peligros. Específicamente, los beneficios adicionales proceden si las lesiones sufridas por el bombero son: "(a) al dirigirse a, o *mientras se dedica a la extinción de un incendio;* o (b) al ser atacado al poner o tratar de poner fin a cualquier desorden, motín o cualquier acción contraria al orden, a la seguridad pública o a la autoridad debidamente constituida a requerimiento de la Policía; (c) *al intervenir* en el salvamento de la vida de un semejante o *para proteger propiedades que por cualquier circunstancia corrieren peligro, para l[o] cual tuviere que arriesgar la suya propia;* (d) al adiestrarse o llevar a cabo simulacros para probar sus destrezas y desarrollar nuevas técnicas que utilizarán en la extinción de incendios." (Énfasis suplido.) 25 L.P.R.A. sec. 377(2).

Este trasfondo doctrinario y estatutario nos mueve a concluir que la norma de *Fireman's Rule* es armonizable con

---

([4]) Miembros de la Policía, guardias penales, Guardia Nacional, agentes de Rentas Internas, superintendentes de instituciones penales, y otros más. 25 L.P.R.A. sec. 376.

el diseño legislativo prevaleciente. En consecuencia, resolvemos, que como regla general, un bombero no tiene a su favor una causa de acción contra el dueño de la propiedad cuando el daño sobreviene en el ejercicio de su cargo y mientras se dedica a extinguir un incendio.

Ahora bien, el impedimento no es absoluto. La norma sufre una excepción en aquellas circunstancias en que se alegue y pruebe que el demandado *intencionalmente causó el incendio*. Aun cuando en estricta lógica aceptamos que un incendio iniciado adrede inherentemente no conlleva riesgos distintos a aquellos de origen negligente, ciertamente existen fundamentos de política pública justificativos de un tratamiento diferente. Primero, el efecto disuasivo de la excepción. Segundo, el derecho penal moderno ha ido abandonando, como únicas penas, la reclusión o multa. Hoy día, el resarcimiento a las víctimas forma parte del inventario de sanciones. Así, el Art. 49A del Código Penal establece la pena de restitución. 33 L.P.R.A. sec. 3212. Y tercero, en sus méritos intrínsecos, existe un elemento de moralidad diferenciador —tanto en su forma como sustancia— entre el acto de incendio intencional y aquel simplemente provisto por la negligencia.

En virtud de lo expuesto, *nos vemos compelidos a desestimar la demanda. Sus alegaciones no configuran una causa de acción válida bajo la excepción a la regla (Fireman's Rule). Este dictamen es sin menoscabo de que la parte actora, dentro del término de diez (10) días de remitido el mandato, proceda a enmendar sus alegaciones de estimarlo susceptible conforme los hechos acaecidos.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López disiente sin opinión escrita.