Zivette Yobeika **ALVARADO,**
**et al., Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. No. 89–1544 (RLA).**

United States District Court,
D. Puerto Rico.

July 13, 1992.

# High

**85**

José R. Pérez–Anzalota, Hato Rey, P.R., for plaintiffs.

Miguel A. Fernández–Torres, U.S. Attys. Office, Civ. Div., Hato Rey, P.R., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

■ Before the Court is the defendant's motion for summary judgment based on the Fireman's Rule[1] and plaintiffs' opposition thereto.

This suit arises out of the death of the Commonwealth of Puerto Rico Police Sergeant Alberto Alvarado (hereafter "Alvarado") and the subsequent suit brought by his relatives for the alleged negligence of the Veterans Administration Hospital in San Juan, Puerto Rico (hereafter "VA Hospital").

Alvarado was shot in the line of duty while attempting to subdue Rafael Pérez Rodríguez ("Pérez Rodríguez" hereafter), a VA Hospital mental patient.

The issues raised by the plaintiffs in their response are (1) the applicability and extent of the Fireman's Rule in Puerto Rico, and (2) whether the VA Hospital is liable under an exception to the Fireman's Rule. We review.

## STATEMENT OF FACTS

### Defendant's Version

The following are the relevant facts according to defendant.

On November 6, 1986, Mr. Pérez Rodríguez was admitted to the VA Hospital for treatment concerning his NP condition (Schizophrenia Paranoid type). Mr. Pérez Rodríguez was subsequently released on December 11, 1986, in stable condition. According to the Veterans Administration, Mr. Pérez Rodríguez was in full contact with reality, not suicidal or homicidal, and able to handle his veteran's disability funds.

On January 12, 1987, Mr. Pérez Rodríguez was seen at the Veterans Affairs Medical Center and treated for Allergic Rhinitis. On April 9, 1987, he was seen again and treated for a spine canal stenosis. On May 8, 1987, Mr. Pérez Rodríguez underwent a Psychiatric Board Examination and was found to be stable with no exacerbations of his NP condition.[2]

On July 22, 1987, Mr. Pérez Rodríguez, without warning, began shooting at anything that moved outside of his house in Salinas. In response to this menace, the P.R. Police Area Tactical Operations Unit, under the command of Sergeant Alvarado, was called in. After tear gas had been fired and the gunfire had subsided, the Tactical Operations Unit stormed the house by breaking down the front door.

Unfortunately, the tear gas apparently had little effect on Mr. Pérez Rodríguez who then shot at the first policeman to enter, hitting Sergeant Alvarado in the head and killing him instantly.

After a further exchange of gunfire, Mr. Pérez Rodríguez was wounded and captured. In the following homicide trial, Mr. Pérez Rodríguez was found mentally unfit to stand trial. On June 30, 1988, Pérez Rodríguez was found not guilty by the Superior Court of Puerto Rico in Guayama due to insanity.

On April 11, 1989, the Superior Court of Puerto Rico in Guayama ordered that Mr. Pérez Rodríguez remain in the Forensic

---

1. Doctrine barring suits by firemen for injuries sustained while in the course of their duties related to the extinguishing of fires.

2. The Veterans Administration states that at no time after the December 11, 1986 discharge date

did Mr. Pérez Rodríguez request further treatment for his NP condition. Since admission into the hospital is voluntary, the Veterans Administration denied the plaintiff's administrative tort claim.

Psychiatric Hospital until it was shown that he no longer represented a threat to society. A follow up hearing was scheduled for February 1, 1990, and the results are not known by this Court.

### Plaintiffs' Version [3]

According to plaintiffs, the following facts preclude application of the Fireman's Rule.

In November of 1986, upon application in state court by his wife, Mr. Pérez Rodríguez was ordered to be involuntarily committed to the State Psychiatric Hospital. Because of his status as a veteran, Mr. Pérez Rodríguez was referred to the VA Hospital in San Juan, Puerto Rico. After thirty-five days of treatment for his NP condition, Mr. Pérez Rodríguez was allegedly discharged with medication to last a few days and no follow up psychiatric appointment.

Plaintiffs claim Mr. Pérez Rodríguez's wife noticed aggressive, disorientated and violent changes in her husband's behavior in March of 1987 which were similar to those exhibited by him in November of 1986. In response to this, both the veteran's wife and son allegedly attempted without success to schedule an appointment at the VA Hospital for her husband.

Plaintiffs aver that on or about April of 1987, Mrs. Rodríguez Rolón managed to get an appointment for her husband on June 5, 1987, after explaining the urgency of the situation and begging for an appointment. However, on the day of the scheduled appointment at the VA Hospital, Mr. Pérez Rodríguez's brother showed up alone, explaining that the veteran's mental health had deteriorated to the point where he was refusing any assistance and had armed himself in the house with a gun.

Plaintiffs further allege that the request by the relatives for assistance in transferring Pérez Rodríguez to the VA Hospital in San Juan for treatment was denied because of the VA's response that such assistance was not available to patients who did not live in the San Juan metropolitan area.

On July 15, 1987, Mrs. Rodríguez Rolón apparently secured a court order for the involuntary commitment of Mr. Pérez Rodríguez in the Ponce Psychiatric Hospital, but the order could not be carried out due to Mr. Pérez Rodríguez's deteriorated mental state. On July 22, 1987, Mr. Pérez Rodríguez fatally shot Sergeant Alvarado after the police responded to the random shots fired by Mr. Pérez Rodríguez.

The plaintiffs contend that these unfortunate events were the result of the VA Hospital's gross negligence and deliberate indifference in the psychiatric management of Mr. Pérez Rodríguez's case. Specifically, the plaintiffs aver that the VA Hospital failed in its duty to make an adequate diagnosis of his condition and failed to provide follow up treatment by refusing or delaying psychiatric appointments sought by Mr. Pérez Rodríguez's wife and son.

We review the facts in order to determine whether a summary judgment is appropriate in these circumstances.

### STANDARD FOR SUMMARY JUDGMENT

As set forth by Rule 56(c) of the Fed. R.Civ.P., summary judgment is appropriate when;

> [t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The First Circuit clarified application of the rule in *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169 (1st Cir.1988), in which the following was stated:

> [W]e observe the Supreme Court's recent pronouncements that to defeat a summary judgment motion, the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those factual issues on which it

---

**3.** Even though plaintiffs have failed to adequately support these factual allegations, we will refer to them in our argument since even assuming them to be true defendant's motion is to be granted.

would bear the burden of proof at trial. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Moody v. Maine Central Railroad Co.,* 823 F.2d 693, 694 (1st Cir. 1987). Furthermore, "the existence of some alleged factual dispute will not defeat a summary judgment motion; the requirement is that there be no genuine issue of material fact." *Kennedy v. Josephtal Co., Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1982); *Hahn v. Sergeant,* 523 F.2d 461, 464 (1st Cir. 1975). Thus, summary judgment is proper when, after adequate time for discovery, the party against whom the judgment is sought failed to show sufficient basis for the establishment of an essential element of its case. *Moody,* 823 F.2d at 694 (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53).

*Kauffman,* 841 F.2d at 1172.

In light of this standard, we review the record before the Court. As mentioned earlier, even though plaintiffs have failed to meet their procedural burden of presenting admissible evidence, Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), even taking them into account, summary judgment is proper.

## APPLICABLE LAW

■ In accordance with the Federal Tort Claims Act, 28 U.S.C. section 2671 *et seq.* and section 1346(b), the federal courts have jurisdiction over claims against the United States and are to apply state or local law in resolving disputes sounding in tort.

Largely relying on *Krauth v. Geller,* 157 A.2d 129, 31 N.J. 270 (1960), the Supreme Court of Puerto Rico, in *Soto Rivera v. Tropigas de Puerto Rico.,* 117 D.P.R. 863 (1986) clearly held that the Fireman's Rule applied to suits brought by firemen injured while carrying out their duties in fighting fires negligently started. The rule was extended to cover policemen in *Ortiz Andujar v. Commonwealth,* 88 J.T.S. 147 (1988).

As stated in *Soto Rivera,* the Fireman's Rule in essence provides that because of the inherently dangerous nature of their job, policemen and firefighters are barred from filing suits against persons whose negligence or lack of care caused the fire or risk which led to their injuries or deaths. The reason behind such a rule is explained in *Soto Rivera.*

> Three rationales serve as the foundation for the rule. The first rationale is based on the principle of assumption of risk, under which recovery in tort is barred when the officer voluntarily encounters a particular hazard. The second rationale derives from the officer's assumption of duties or the foreseeable risks of employment. The third is a cost-spreading rationale, under which recovery in tort is barred by the availability of a statutory scheme. In conjunction with these rationales, the rule only bars actions for injuries caused by the misconduct that prompted the officer's presence at the scene.

*Soto Rivera,* 117 D.P.R. at 867, citing Riley, *The Fireman's Rule: Defining its Scope Using the Cost–Spreading rationale,* 71 Calif.L.Rev. 218 (1983).

Moreover, in stating that the public policy grounds underlying the cost-spreading rationale were the most persuasive, the court recognized that:

> the inherently hazardous character of such jobs and that the existence of the Fireman's Rule is inextricably associated with the legislative scheme of salary, disability, and death benefits to which fireman are particularly entitled for injuries sustained in the performance of their duties.

*Soto Rivera,* 117 D.P.R. at 870, citing *Krauth v. Geller,* 157 A.2d 129 (1960).

■ In addition to clearly indicating that the Fireman's Rule is applicable in Puerto Rico, the Court also explicitly acknowledged certain traditional exceptions to the Rule, namely intentionally caused fires (or intentional torts), and the independent actor exception. Plaintiffs have essentially raised the independent actor exception in their response to defendant's motion.

The exception for intentionally caused fires allows fire fighters to sue arsonists for injuries suffered while combating the hazardous blaze. The exception is based on public policy grounds, such as the dissuasive effect and indemnification as a means of punishment, which justifies the different treatment.

As to the independent actor exception, "[a]n injury that occurs independently of the misconduct to which the officer responds is outside the scope of the rule and the officer will be able to proceed in tort." *Soto Rivera*, 117 D.P.R. at 867, citing Riley, *The Fireman's Rule: Defining its Scope Using the Cost–Spreading rationale*, 71 Calif.L.Rev. 218 (1983).

The classic example of the independent actor exception is of the police officer who, while ticketing parked cars, is hit and injured by a speeding car. The police may not bring an action against the owner of the illegally parked car because it is precisely the reason that brought the officer to the location. The officer, however, may bring a suit against the independent and unrelated speeder who caused the injuries. *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal. Rptr. 152, 571 P.2d 609 (1977); *The Fireman's Rule: Defining its Scope using the Cost Spreading Rationale*, 71 Cal.L.Rev. 218 (1983).

The plaintiffs aver that the VA Hospital was an independent actor with respect to decedent's injuries. They argue it was the defendant's negligence in failing to properly manage the veteran which caused the police officer's death and that said negligence was unrelated to the event which brought decedent to the place of injury.

■ In applying the facts of this case to current law, we find that the essential elements of the Fireman's Rule, namely the assumption of risk, the foreseeability of potential injury, and the cost spreading legislative scheme of compensation are all present. The Tactical Operations team is trained for such dire circumstances and presumably knew and could foresee the risk involved in the inherently dangerous situation, considering that they were called in response to a man shooting out of a window. Furthermore, the Police and Fire Retirement and Relief Act, P.R.Ann., tit. 25 Section 376 *et seq.*, and the Workmen's Accident Compensation Act, P.R. Laws Ann., tit. 11 Section 1 *et seq.* are present to compensate for injuries received during the performance of their respective duties.

The plaintiffs' assertion that the VA Hospital is the independent actor responsible for the injuries but unrelated to the event which brought the officer to the place of injury, and thus exempt from the Fireman's Rule, is without merit.

Of all the cases concerning independent acts resulting in injury with regard to the Fireman's Rule, all have the commonality of the independent actor directly causing the injury. The plaintiffs fail to cite, and we fail to find, any case to the contrary. In the case of Mr. Pérez Rodríguez, it was his violent behavior which directly brought about the unfortunate injuries. Furthermore, this conduct was precisely the reason why the police were called to the location. Whether the VA Hospital afforded the proper treatment is immaterial for purposes of this exception to the Rule.

In a somewhat similar case, *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609 (1977), the plaintiff officer sued the parents whose daughter had served alcohol, with the knowledge of her parents, to her minor friends who later assaulted the officer when he attempted to arrest a drunk and disorderly minor. The Supreme Court upheld the trial court's demurrer on the basis of the Fireman's Rule, citing the assumption of risk and cost-spreading doctrines.

In *Lipson v. Superior Ct. of Orange County*, 31 Cal.3d 362, 182 Cal.Rptr. 629, 644 P.2d 822 (Super.Ct.1982), the court held that the presence of toxins in a boil-over posed a different hazard from the non-toxic spill to which the firefighters had originally responded. "[I]ndependent misconduct is found when a public officer is injured by a member of the public while responding to a matter unrelated to the misconduct of the tortfeasor." Since the toxic injuries suffered by the firefighters resulted independently from their original reason for being

present, the owner of the premises was not protected by the Fireman's Rule.

If it was Pérez Rodríguez who directly caused the injuries, then the VA Hospital cannot possibly be liable under the independent actor exception. On the other hand, if the VA Hospital was a third party whose negligence created the risk, it cannot be deemed an unrelated independent hazard since it is directly connected with the violent situation which brought the officers to the place of injury.

Accordingly, we find that there is no merit to the plaintiffs' contention that the VA Hospital was an independent actor in the facts present in this case.

Plaintiffs further argue that the VA Hospital failed in its duty to correctly diagnose and restrain a dangerous patient. In *Soto Rivera,* 117 D.P.R. at 869, the Court noted that, as the plaintiffs assert, "[t]he new trend lays emphasis on the fact that, as an exception, the landowner may be liable to the fireman ... (3) if the negligence emerges from non-compliance with a statutory duty imposed for the protection of third persons." *See Krauth,* 31 N.J. at 274, 157 A.2d 129 (a fireman may recover if the injurious hazard was created in violation of statute or ordinance).

Even though some cases have held that violations of a statutory duty constitute another exception to the Fireman's Rule, we find two defects with the plaintiffs' argument. First, the plaintiffs fail to cite any specific statutory duty which has been breached, and secondly, the supporting authorities cited by the plaintiffs come from a jurisdiction in which the underlying doctrine for the Fireman's Rule, i.e. the assumption of risk, has been statutorily abolished since 1975.[4] *See Christensen v. Murphy,* 296 Ore. 610, 678 P.2d 1210

(1984). As such, the authorities refer to a distinct analytical approach in which the assumption of risk is not a factor.

Since this is not the case in our jurisdiction, in which the Fireman's Rule has been expressly adopted and the assumption of risk doctrine is still in effect, the cases cited by the plaintiffs for this proposition are inapplicable.

Further, even if we were to accept the plaintiffs' contention that the omission of a statutory duty constitutes an exception to the Fireman's Rule in our jurisdiction, we believe that the concept is linked to the issue of foreseeability; the duty of care found in Fireman's Rule cases usually refer to the duty of a landowner to warn the rescuers of hidden hazards which are not foreseeable.[5]

Thus, even if we assume that the VA Hospital violated a duty of care, the hazard presented by the alleged breach, specifically the possibility of harm being inflicted by Mr. Pérez Rodríguez, is precisely the same hazard the police officers responded to, knew of, and could foresee when confronting Mr. Pérez Rodríguez's violent behavior at his house in Salinas.

Once a hidden defect is known, as the risk presented here was, the police can be said to have known, foreseen, and have assumed the risk.

Though not of our jurisdiction, *Santangelo v. State of New York,* 494 N.Y.S.2d 49, 129 Misc.2d 898 (Cl.Ct.1985), illustrates this notion.

Where the state is found negligent in failing to prevent the escape of a mental patient having known dangerous propensities and in failing to apprehend him and the negligence is the proximate cause of claimants' injuries, which occurred dur-

---

**4.** "Implied assumption of risk in both primary and secondary forms statutorily has been abolished in this state since 1975, and thus cannot serve as an absolute bar to a plaintiff's recovery." *Christensen,* 296 Ore. at 618, 678 P.2d 1210.

**5.** In *Soto Rodríguez,* 117 D.P.R. at 869, 870, when referring to the violation of a duty of care, the Court stated that "under this approach the duty of care of the owner extends to hidden,

unforeseeable and unknown hazards which cannot be noticed by a fireman who exercises an ordinary care and who is not timely warned by the other." *See Krauth,* 157 A.2d at 129 (1960) (emphasis not upon culpability with respect to the inception of the fire but rather with respect to other risks); *Bandoz v. Daigger & Co.,* 255 Ill.App. 494 (Ct.App.1930) (storage of dangerous substance); *Drake v. Fenton,* 237 Pa. 8, 85 A. 14 (Sup.Ct.1912) (failure to guard elevator shaft).

ing an attempted apprehension and were reasonably foreseeable, the police officers' claim is dismissed since case law has consistently prohibited recovery by firemen and policemen for injuries sustained as a result of negligence which created the need for the special services for which they are trained under the rationale that sound public policy justifies the denial of double recovery from the public trough in light of the many benefits available to policemen and firemen to compensate them for the hazards they face and under the doctrine of assumption of risk; the Court of Appeals has recently held ... that, even with the enactment of CPLR article 14–a, the assumption of risk doctrine may still act to negate a defendant's duty in its entirety, serving as a complete bar to recovery. . . .

Because the plaintiffs have failed to raise an issue of material fact, for the reasons expressed herein, the defendant's motion for summary judgment filed on March 23, 1992, is hereby GRANTED. Accordingly, the complaint filed in this action is dismissed based on the Fireman's Rule.

Judgment to be entered accordingly.

IT IS SO ORDERED.