JOSÉ VIÑAS Y SU ESPOSA FRANCISCA CASAÑAS DE VIÑAS, demandantes y recurrentes, *v.* PUEBLO SUPERMARKET OF PUERTO RICO, INC., y GREAT AMERICAN INDEMNITY COMPANY, demandados y recurridos; R. PÉREZ COLLAZO h/n/b ESSO SERVICE STATION, tercero demandado y recurrido.

*Número:* 112     *Resuelto:* 14 de septiembre de 1962

34

*Oscar Castro Rivera,* abogado de los recurrentes; *Clemente Pérez Martínez* y *Carlos A. Todd,* abogados del tercero demandado y recurrido; *Rivera Zayas, Rivera Cestero & Rúa* y *Aldo Segurola de Diego,* abogados de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

El Juez Asociado Señor Dávila emitió la opinión del Tribunal.

La demandante sufrió un accidente en el área de aparcamiento que sirve al Supermercado Pueblo localizado a la salida de Río Piedras hacia Caguas. Reclamó de la entidad que opera el supermercado y de la aseguradora de ésta el resarcimiento de los daños sufridos. La aseguradora instó demanda de tercero contra el operador de una estación de servicio de gasolina situada junto al área de aparcamiento donde ocurrió el accidente. El tercero demandado contestó la demanda de tercero así como la instada por la aquí recurrente. El tribunal de instancia rechazó la pretensión de la reclamante. Determinó que aunque la demandada y el tercero demandado habían sido negligentes, la demandante, "pudiendo evitarlo caminando un poco más para pasar por un sitio seco, asumió el riesgo que ocasionó el accidente", lo que derrotaba su causa de acción totalmente.

Así ocurrieron los hechos que dieron margen al presente pleito. La reclamante descendió de un automóvil y al ir a cruzar el trecho que la separaba del establecimiento donde radica el supermercado, resbaló y cayó al suelo. Sobre el pavimento y la acera había agua con grasa, pero el tribunal concluye, y así lo revelan las fotografías, que había otro sitio por donde pasar que no estaba invadido por las aguas grasosas. El tribunal sentenciador determinó que las aguas provenían de la estación de servicio operada por el tercero demandado. Determinó asimismo que la corporación demandada tenía conocimiento de la situación y que no había realizado gestión alguna para evitar que las aguas discurrieran por el área de aparcamiento. ▪

En el actual estado de la ley "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización",(¹) Art. 1802 del

---

(¹) "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

Código Civil, 31 L.P.R.A. sec. 5141 (Supl. 1961). Así la cuestión se reduce a determinar si el concepto "imprudencia"(²) como se usa en la ley incluye la asunción de riesgo. ▋

El término "asunción de riesgo" enmarca diversas acepciones. *Meistrich* v. *Casino Arena Attractions*, 155 A.2d 90, 82 A.L.R.2d 1208 (N. J. 1959); *Montellier* v. *United States*, 202 F. Supp. 384, 394 (D.C.E.D.N.Y. 1962); Keeton, *Injuries From Open and Obvious Conditions*, 33 Texas L. Rev. 1, 4 (1954). ▋

Se usa en ocasiones en que se ha pactado expresa o tácitamente no reclamar, no obstante la parte demandada estar incursa en negligencia. *Meistrich* v. *Casino Arena Attractions*, supra. Obviamente ésta no es la acepción que entra en juego en este caso. Se emplea también el término en situaciones en que el demandado no ha incurrido en responsabilidad ya que no tenía obligación de clase alguna para con el reclamante; o de haberla tenido, no la quebrantó. Se clasifica ésta como asunción de riesgo en sentido "prima-

---

(²) En la vista celebrada el 24 de febrero de 1956 ante la Comisión de lo Jurídico Civil del Senado para considerar el P. del S. 652 correspondiente al cuatrienio 1953–1956, que se convirtió en la Ley Núm. 28 de 1956, enmendatoria del art. 1802 del Código Civil, se explicó así el uso del vocablo "imprudencia", según aparece de una transcripción de dicha vista obrante en el expediente del Departamento de Justicia:

"Como expliqué en la primera vista, al redactarse el proyecto, o el anteproyecto, se trató de ser lo más preciso posible desde el punto de vista de la técnica jurídica y después del estudio global de la materia encontramos que el término preciso a usarse en este caso era 'la imprudencia del perjudicado'. En eso estábamos siguiendo ya ejemplos de autores y hasta de códigos de otros países que usaban el término 'imprudencia' y además una discusión que habíamos leído en que se planteaba la improcedencia, en pura terminología jurídica, de hablar de culpa o negligencia contra uno mismo; porque la culpa o negligencia es un fenómeno jurídico que implica violación de deberes hacia otro y por eso era un poco impreciso el hablar sobre culpa o negligencia del perjudicado contra sí mismo y preferíamos seguir la terminología de la imprudencia."

rio".([3]) *Texidor* v. *Admor. de Parques*, 85 D.P.R. 877 (1962) ; *Meistrich* v. *Casino Arena Attractions*, supra; 2 Harper & James, *The Law of Torts*, Sec. 21.1 (ed. 1956). Tampoco ésta es aplicable a la situación de hechos que este caso presenta. En otra acepción, clasificada como "secundaria", la asunción de riesgo es una defensa afirmativa que puede alegar quien ha quebrantado una obligación.([4]) El reclamante ha asumido el riesgo creado por el quebrantamiento de una obligación que el demandado tenía para con él. *Meistrich* v. *Casino Arena Attractions*, supra; 2 Harper & James, *op. cit.* 1 sec. 21.1; James, Jr., *Assumption of Risk*, 61 Yale L. J. 161 (1952). Esta última es la situación que el caso de autos presenta. El Supermercado no cumplió con la obligación de mantener el área de aparcamiento segura para sus clientes. Era su obligación hacerlo. *Morris* v. *Atlantic & Pacific Tea Company*, 121 A.2d 135 (Pa. 1956) ; *Hoffman* v. *The Kroger Company*, 340 S.W.2d 152 (Mo. 1960). La demandada no niega esta obligación. La demandante, a pesar de que había otro sitio para pasar, decidió hacerlo por donde estaba cubierto por las aguas grasosas. Actuó imprudentemente. ■

La situación de hechos que aquí consideramos lo que presenta es un caso típico de negligencia contribuyente. Así se ha sostenido por los entendidos en la materia, y los tribunales así lo han determinado. Sostienen que la asunción de riesgo en su sentido "secundario" no es otra cosa que una fase o manifestación de la negligencia contribuyente.

En *Hubenette* v. *Ostby*, 6 N.W.2d 637 (Minn. 1942) se expuso lo siguiente a la pág. 638:

"En una acción de daños personales corriente, cuando un demandante se coloca en una posición en que se ha de enfrentar

---

([3]) En los casos de *Echevarría* v. *Despiau*, 72 D.P.R. 472 (1951) y *Palmer* v. *Barreras*, 73 D.P.R. 279 (1953) hicimos alusión a la asunción de riesgos en su sentido "primario", pero en ambos determinamos que no era aplicable a los hechos que presentaban.

([4]) Las Reglas 8c de 1943 y 6.3 de 1958 de las de Procedimiento Civil establecen que la defensa de asunción de riesgo y negligencia deberán hacerse afirmativamente.

con riesgos potenciales por él conocidos, que una persona prudente ordinariamente evitaría, dicho demandante asume el riesgo por cualquier lesión que sufra por su conducta. Tal asunción de riesgo es una fase de la doctrina de negligencia contributoria y debe ser incluida apropiadamente dentro de dicho término. *Mosheuvel* v. *District of Columbia,* 191 U.S. 247, 257, 24 S. Ct. 57, 48 L. Ed. 170; *Houston, E. & W. T. Ry. Co.* v. *McHale,* 47 Tex. Civ. App. 360, 105 S.W. 1149; *Restatement, Torts,* § 466, comentarios c, d; Prosser, *Torts,* § 51, p. 379."

La Corte Suprema de los Estados Unidos en *Owens* v. *Union Pacific R. Co.,* 319 U.S. 715 (1943) manifestó:

"Las defensas conocidas en el derecho común como asunción de riesgo, negligencia contributoria y la doctrina del coempleado (fellow servant rule) se originaron y desarrollaron conjuntamente. Aunque no se concibieron en idénticas formas, se unieron y confundieron al dársele aplicación a las mismas. Al confundirse, primeramente oscurecieron y luego crearon una confusión que sirvió solamente para crear mayor confusión; con el tiempo las tres defensas, en vez de distinguirse una de otra, se hicieron indistinguibles. Y la defensa de asunción de riesgo, al dársele un nombre incorrecto, ocupó grandes zonas de la ley de negligencia."

Véanse además *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U.S. 54, 62 *et seq.* (1943); Prosser, *The Thomas M. Cooley Lectures, Comparative Negligence,* 1, 48 (1953); Buford, *Assumption of Risk Under the Federal Employers' Liability Act,* 28 Harv. L. Rev. 163, 183 (1914).

En el caso de *Meistrich* v. *Casino Arena Attractions,* supra, se dijo:

"Estamos satisfechos que no existe razón alguna para clasificar la teoría de asunción de riesgos en su sentido 'secundario' como una cosa distinta de la negligencia contributoria, y por lo tanto, al proyectar esta idea en el sentido indicado, no debe usarse la terminología de la doctrina de la asunción de riesgos. Por el contrario, según se sugiere en *Hartman* v. *City of Brigantine,* supra, (23 N.J. a la pág. 537, 129 A.2d a la pág. 880), debe ser incluida bajo la negligencia contributoria."

Los siguientes casos sostienen que la asunción de riesgo en la modalidad denominada "secundaria" equivale a negligencia contributoria. *Mackintosh Co.* v. *Wells*, 118 So. 276 (Ala. 1928); *Boulder Valley Coal Co.* v. *Jernbegr*, 197 P.2d 155 (Colo. 1948); *Ballow* v. *Jewett City Sau Bank*, 24 A.2d 260 (Conn. 1942); *Barthoff* v. *Baker*, 71 So.2d 480 (Fla. 1954); *Hargis* v. *Standard Oil Co.*, 134 N.W.2d 518 (Ill. 1956); *Emhardt* v. *Perry Skadicine, Inc.*, 46 N. E.2d 704 (Ind. 1943); *Electric Plant Board* v. *Dotson*, 304 S.W.2d 779 (Ky. 1956); *Porter* v. *Cornett*, 206 S.W.2d (Ky. 1947); *Spears* v. *American Fidelity & Casualty Co.*, 123 So.2d 513 (La. 1960); *Grasaw* v. *Hanson*, 32 N.W.2d 583 (Minn. 1948); *Schleisner Co.* v. *Birchett*, 96 A.2d 494 (Md. 1953); *Centrello* v. *Basky*, 128 N.E.2d 80 (Ohio 1955); *Vetaro* v. *C.W. & P. Constr. Co.*, 28 N.E.2d 507 (Ohio 1940); *Earll Wichser*, 30 A.2d 803 (Penn. 1943); *Chattanooga Gas Co.* v. *Underwood*, 270 S.W.2d 652 (Tenn. 1954); *Packard* v. *Quesnel*, 22 A.2d 164 (Vt. 1941); *Rocky Mountain Trucking Co.* v. *Taylor*, 335 P.2d 448 (Wy. 1959); *Askin* v. *Dalgarno*, 293 F.2d 424 (10mo. cir. 1961); *Weber* v. *Eaton*, 160 F.2d 577 (D. C. Cir. 1947). Véase además la exhaustiva monografía en 82 A.L.R.2d 1218 (1962).

Harper & James, *op. cit.* al evaluar la exposición que hacen en su tratado de la defensa de asunción de riesgo terminan con la siguiente afirmación:

"La doctrina de la asunción del riesgo constituye en casi todos sus aspectos, no importa como sea analizada y definida, la teoría del demandado que limita su responsabilidad y como consecuencia reduce la compensación de víctimas en accidentes. Es una rémora del individualismo extremo de los comienzos de la revolución industrial. Pero aparte de cualquier cuestión de norma o de substancia, el concepto de asumir el riesgo es meramente una reexposición de otros términos o conceptos mucho mejor conocidos, tales como el alcance del deber o la doctrina de negligencia contributoria. . . .

Excepto en los casos de asunción de riesgo, propiamente dichos [se refiere a la acepción primaria a que hemos aludido] el término y el concepto deben ser abolidos. Nada añade al derecho moderno, excepto confusión."

Ver además Prosser, *Torts*, Sec. 55, pág. 305 (2da. ed. 1955); Payne, *Assumption of Risk and Negligence*, 35 Con. B. Rev. 950 (1957); James, Jr., *Tort Liability*, 63 Yale L. J. 605, 630, 631 (1954); Green, *Protection Under Negligence Law*, 47 Nw. U.L. Rev. 751 (1953); Whelan, *Comparative Negligence*, (1938) Wis. L. Rev. 465, 482; Harbinson, *Distinction Between Assumption of Risk and Contributory Negligence in Wisconsin*, (1960) Wis. L. Rev. 460.

En el estado de Wisconsin, donde existe una versión de la negligencia comparada (39 W.S.A. 331.045)—se requiere que la negligencia del demandante sea menor que la del demandado—se había sostenido que si bien la negligencia contributoria establecida en el grado requerido por la ley no derrotada la acción, la asunción de riesgo era una defensa absoluta. *Shrofe* v. *Rural Mutual Cas. Ins. Co.*, 45 N.W.2d 76 (Wis. 1950); *Schiro* v. *Oriental Realty*, 76 N.W.2d 355 (Wis. 1956). Ahora, hace apenas ocho meses, el Tribunal Supremo de aquel Estado cambió de posición y concluyó que la negligencia contributoria y la asunción de riesgo en ciertos casos, equivalen a lo mismo y adopta esa nueva postura por estar más acorde con el espíritu que anima la adopción de la doctrina de negligencia comparada. *McConville* v. *State Farm Mutual Automobile Ins. Co.*, 113 N.W.2d 14 (Wis. 1962); Nota 60 Mich. L. Rev. 819 (1962); *Bielski* v. *Schulze*, 114 N.W.2d 105 (Wis. 1962) y véase opinión concurrente en *Baird* v. *Cornelius*, 107 N.W.2d 278 (Wis. 1961. ■

Es pues inevitable la conclusión de que la negligencia contribuyente y la asunción de riesgos en el sentido que la hemos considerado, y bajo las circunstancias concurrentes

en este caso son la misma cosa, y que el demandante que incurre en cualesquiera de ellas no pierde su causa de acción, pero ello conlleva la reducción de la indemnización a que pueda tener derecho. ▪

Consideraremos ahora la indemnización a concederse. El juez de instancia, como hemos dicho, determinó que la demandante pudo haber evitado pasar por las aguas que invadían el área de aparcamiento. Así, la reclamante incurrió en negligencia de igual forma que fueron negligentes el dueño de la estación de servicio y la dueña del Supermercado al crear el primero y tolerar la segunda una situación peligrosa. Procede, pues que los daños sufridos por la demandante se reduzcan a la mitad. ▪

La demandante según la prueba ante nos, sufrió una caída y "había tenido un traumatismo severo en el pie derecho, en la rodilla izquierda, y en una mano", a los cuatro días del accidente "presentaba hinchazón de toda la pierna derecha desde el tercio medio de la pierna derecha hasta el pie derecho", demostrando "signos de formación de un gran hematoma que ocupaba la región del tobillo y de las articulaciones del tarso en el pie derecho". Sentía gran dolor. Presentaba laceraciones en la rodilla izquierda y "una ligera lesión en la mano izquierda en el dedo anular". Se le tomaron radiografías y éstas revelaron "una abulsión [sic] un ligero desprendimiento en la cara superior del hueso escafoides del tarso derecho". Con motivo de esto permaneció en cama cerca de 25 días y luego fue referida al fisioterapista. Tuvo una recuperación total, pero a la fecha del juicio todavía sentía dolor al caminar. Incurrió en gastos por concepto de honorarios médicos, medicinas y radiografías que ascendieron a $285. De no haber incurrido en negligencia contribuyente los daños sufridos podrían estimarse en $4,000, pero como procede la reducción de la indemnización en la forma indicada anteriormente, *se revocará la sentencia dictada por*

*el Tribunal Superior, Sala de San Juan, en 22 de enero de 1959 y se dictará otra en su lugar condenando a las demandadas y al tercero demandado (⁵) a satisfacer solidariamente la suma de $2142.50, con imposición de costas, incluyendo las incurridas en el presente recurso de revisión.*

---

(⁵) Al no enmendar su demanda para incluir al tercero demandado como parte demandada en la acción, podría aducirse que no puede dictarse sentencia en su contra en la forma que lo hemos hecho (Regla 14 de 1943 en vigor cuando se inició la acción y se incluyó el tercero demandado; Cf. Regla 12.1 de 1958), pero considerando que dicho tercero contestó no sólo la demanda contra tercero, sino que formuló alegaciones contra la demanda original, y que la demandante presentó prueba inculpatoria contra ambos—las demandadas y el tercero demandado—no hacerlo constituiría sublimar un refinamiento procesal para impedir completa justicia. Véase, *Simonpietri* v. *Blanco* v. *Lippitt & Simonpietri,* 74 D.P.R. 533 (1953).