BLAS FERMÍN COLÓN HERNÁNDEZ ET ALS., demandantes y
recurridos, v. EL MUNICIPIO DE OROCOVIS ET ALS., deman-
dados y recurrentes, ESTADO LIBRE ASOCIADO DE PUERTO
RICO, tercero demandado y recurrido.

*Número:* R-71-292      *Resuelto:* 13 de diciembre de 1972

*Vicente Santori Coll* y *Luis Rodríguez Bou,* abogados de los recurrentes; *Enrique Corchado Juarbe* y *Manuel González Villafañe,* abogados de los recurridos; *Gilberto Gierbolini, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados del tercero demandado-recurrido.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Rosa Casiano, casada, madre de cuatro hijos, trabajaba como Supervisora en una fábrica de medias en Orocovis. El 6 de mayo de 1969, salió de su trabajo pero no pudo llegar a su casa. Las fuertes lluvias que habían caído sobre la Cordillera Central causaron la avenida del Río Orocovis. Las aguas pasaron sobre un puente a la entrada de la población. El tránsito se interrumpió. A ambos lados del puente se habían congregado muchas personas a observar la corriente. Asimismo estaban detenidos varios vehículos esperando que las aguas bajaran. Mientras Rosa Casiano y sus compañeras de trabajo esperaban, llegó un ómnibus escolar propiedad del Municipio de Orocovis. Declara una testigo de la parte demandante:

". . . Luego llegó el señor que guía la guagua. Entonces se parquó [*sic*] y él dijo que sí, que iba a cruzar; que los que nos quisiéramos ir con él que nos montáramos. Entonces nosotros nos montamos en la guagua. Entonces . . . .

LA CORTE: Vaya poco a poco, si me hace el favor, señora. El chofer de la guagua dijo que iba a cruzar . . . . Y el que quisiera montarse que se montara." (T.E. pág. 6).

Abordaron la guagua Rosa Casiano y sus compañeras. Algunos vehículos tuvieron que ser movidos para que la guagua pudiera iniciar la marcha. "En el momento en que el conductor del autobús se propuso cruzar el puente, la corriente alcanzaba una altitud de entre 5 y 6 pies sobre el nivel del puente. El puente no era visible por estar totalmente

cubierto por las aguas obscuras de la creciente. La corriente era bien fuerte y había permanecido en esa condición durante varias horas antes de ocurrir el accidente." (Determinación de Hecho Núm. 9.)

Teodoro Correa Alvarado, testigo de la demandante describe lo ocurrido así: "Tan pronto trató de cruzar el agua, la levantó de la parte delantera y de la parte derecha y la lanzó a la parte izquierda sobre el puente." . . . "Después un camión se alineó en el vado paralelo, y trajeron un tablón de madera y lo pusieron de la ventanilla del camión a la ventanilla de la guagua y por ahí se iban sacando las mujeres." (T.E. págs. 12 y 13.)

Todas las mujeres que abordaron la guagua se salvaron, menos Rosa Casiano. Resume así el juez de instancia lo que le aconteció.

"Al observar lo que acababa de pasar Iluminado Díaz movió su truck de 14 metros para proteger la guagua de las aguas. Le rompió los cristales de una ventana a la guagua que se estaba llenando de agua y se abrió la puerta. El agua le daba al pecho a las mujeres. Procedió a darle una llave inglesa a otra de las personas dentro del vehículo para romper más cristales. En ese instante la señora Casiano *presa de pánico* saltó por una ventana y se le tiró encima y ambos cayeron a las aguas. El se salvó. Ella no." (Determinación de Hecho Núm. 10.)

El viudo y los cuatro hijos radican demanda para resarcirse contra el Municipio de Orocovis y su aseguradora. Estos radican demanda de tercero contra el Estado Libre Asociado. El tribunal de instancia declaró con lugar la demanda. Estimó los daños sufridos por todos los demandantes en $119,240 reduciéndolos a $83,468, al determinar que la víctima había incurrido en 30% de negligencia. Adjudicó que la compañía aseguradora respondía por $20,000 y la condenó a satisfacer $5,500 de honorarios de abogado. Condenó al municipio a pagar $1,000 por ese concepto. Desestimó la demanda de tercero radicada contra el Estado Libre Asociado

de Puerto Rico. Recurrieron el municipio y la aseguradora. Apuntan varios errores.

Sostiene además, que la Ley Municipal según enmendada, 21 L.P.R.A. sec. 1603(a) (Tomo 4A Suplemento 1972), impide que se dicte sentencia contra el municipio por una cantidad en exceso de $30,000 sin antes obtener el consentimiento de la Asamblea Municipal.

■ (1) La contención de los recurrentes al efecto de que el conductor de la guagua escolar la operaba sin autorización legal no tiene mérito. Dispone la Ley de Vehículos y Tránsito en su sección 13-101, 9 L.P.R.A. sec. 1751 que:

> "El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o está bajo el dominio o control de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona.
>
> La persona por cuya negligencia haya de responder el dueño de un vehículo de acuerdo con las disposiciones· del párrafo anterior vendrá obligada a indemnizar a éste."

Vista esta disposición legal, es inescapable la conclusión de que el municipio responde de los actos del conductor.

(2) Sostienen los recurrentes que las circunstancias en que se desarrollaron los hechos, impiden que los hijos y el viudo de la víctima puedan resarcirse. Reexaminemos lo que ocurrió.

Una Supervisora de una fábrica de medias, madre de cuatro hijos, al salir de su trabajo se encuentra que no puede llegar a su casa porque el río está crecido. Hay muchas

personas a ambos lados del puente esperando a que el río baje. Las aguas cubren el puente enteramente. A pesar de ello, aborda la guagua con otras compañeras y al empezar a cruzar el puente, el río arrastra la guagua hacia un llado del puente. Se llena el vehículo de agua. Deciden poner un camión cargado al costado de la guagua, para protegerla de la fuerza de la corriente. A la vez lo utilizan para colocar un tablón y facilitar la salida de los pasajeros. El chofer del camión rompe las ventanillas de la guagua para que el agua pueda fluir sin obstáculo. La víctima presa de pánico, se lanzó por una de las ventanillas. Perece. Todas sus compañeras se salvaron.

En *Viñas* v. *Pueblo Supermarket,* 86 D.P.R. 33 (1962) consideramos la defensa de asunción de riesgos a la luz del actual estado de la ley. Consignamos allí que el concepto asunción de riesgos tiene dos acepciones. Asunción de riesgo en sentido "primario" y en sentido "secundario". En la primera acepción "se emplea el término en situaciones en que el demandado no ha incurrido en responsabilidad ya que no tenía obligación de clase alguna para con el reclamante o de haberlo tenido, no la quebrantó." *Viñas,* supra, pág. 36. Esta acepción es la que los recurrentes sostienen que se aplica en el presente caso. La otra acepción clasificada como secundaria, "no es otra cosa que una fase o manifestación de la negligencia contribuyente." *Viñas,* supra.

■ Considerados como se desarrollaron los hechos que dan base a la acción ejercitada no es aplicable la acepción "primaria", ya que aunque el chofer no tenía obligación alguna para las personas antes de abordar la guagua, una vez la puso a disposición de éstas, asumió una responsabilidad que en virtud de lo estatuido en la Ley de Automóviles antes citada, alcanza al municipio. Parece claro que la norma aplicable es la asunción de riesgo en su segunda acepción; que como hemos dicho no es otra cosa que la negligencia con-

tribuyente. Ahora bien, la negligencia del conductor no fue superior a la de Rosa Casiano, como determinó el juez de instancia. Era evidente para ésta el peligro a que se arriesgaba y ciertamente el pánico que se apoderó de ella contribuyó a su desgracia. En esas circunstancias nos parece que una distribución razonable de la negligencia, sería 50% para la víctima y 50% para el conductor de la guagua.

(3) El tribunal de instancia concedió las siguientes partidas: "(1) A Blas Fermín Colón por la muerte de su esposa, pérdida de su compañía, cariño y atención personal y sus angustias mentales, $25,000 y por la pérdida del ingreso que ella aportaba $12,880 para un total de $37,880, (2) A Rosa Ivelisse Colón por la pérdida de su madre, su cariño y compañía y sus angustias mentales al presenciar los hechos, $15,000 y por la pérdida del ingreso que ella aportaba $12,880, para un total de $27,880. (3) A cada uno de los menores, Blas Orlando, Ramón Luis y José Reinaldo Colón por la pérdida de su madre, su cariño y compañía y sus angustias mentales la suma de $5,000 y por la pérdida del ingreso que ella aportaba la suma de $12,880 para un total de $17,880 cada uno. De esta sentencia los demandados responderán de un 70% de las cantidades asignadas a cada demandante y la co-demandada Insurance Co. of Puerto Rico responderá por la suma de $20,000 bajo la póliza."

El tribunal sentenciador concedió la suma de $64,400 por lucro cesante. Para llegar a esa cantidad tomó "como base el sueldo semanal de $60 y una expectativa de vida de 30 años y considerando que con cuatro dependientes no habrá que pagar contribución de ingreso deduciendo una tercera parte para sostenimiento de la occisa." (Conclusión de Derecho Núm. 6.)

El tribunal para llegar a la suma de $64,400 multiplicó el sueldo semanal de $60 por la expectativa de vida de la occisa que estimó en 30 años. Esta operación dio

$93,600 de la cual dedujo una tercera parte para sosteni-miento, adjudicando al viudo y a los hijos por igual los restantes $64,400. (¹)

El juez trató de seguir la fórmula a que hicimos referen-cia en *Vda. de Seraballs* v. *Abella Hernández*, 90 D.P.R. 368 (1960), pero no lo ajustó, de acuerdo con la tabla a que aludi-mos en dicho caso, teniendo en cuenta el hecho de que se recibiría la suma globalmente.

■ Sin entrar a considerar si esa es la forma correcta de determinar la compensación por lucro cesante, lo cierto es que no se presentó prueba sobre el estado de salud de la occisa ni del promedio de ingreso derivado de su trabajo durante algunos años antes del accidente; ver *Vda. de Delgado* v. *Boston Ins. Co.*, 99 D.P.R. 714, 728 (1971), lo que hace imposible determinar adecuadamente el monto de esa partida.

Procede pues eliminar la partida concedida por lucro cesante.

■ (4) Estuvo correcto el tribunal sentenciador al decla-rar sin lugar la demanda de tercero radicada contra el Estado Libre Asociado. El hecho de no haberse construido un puente adecuado no fue la causa próxima del accidente.

■ En cuanto a las cantidades concedidas para honora-rios de abogados se reducen a $2,500 la que debe pagar la compañía aseguradora.

Habiéndose determinado que la causante de los deman-dantes incurrió en 50% de negligencia, procede modificar la sentencia en el sentido de condenar a la parte demandada a pagar a Blas Fermín Colón la cantidad de $12,500, a Rosa Ivelisse Colón, la cantidad de $7,500 y a cada uno de los menores $2,500, que hace un total de $27,500, de los cuales la compañía aseguradora pagará $20,000.

*Se modificará la sentencia dictada por el tribunal de instancia de acuerdo con los términos de esta opinión.*

---

(¹) El resultado correcto de esta operación es $62,400 y no $64,400.