Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| KEIRA RIVERA SANTIAGO, POR SI Y EN REPRESENTACIÓN DE LOS MENORES JCFR Y CJFR; DIANA SANTIAGO RIVERA<br><br>Apelado<br><br>v.<br><br>ALTITUDE COSTA, LLC., H/N/C ALTITUDE TRAMPOLINE PARK; FULANO DE TAL; COMPANIAS DE SEGUROS A, B, C; JUAN CARLOS FUENTES BURGOS<br><br>Apelante | TA2025AP00158 | *APELACIÓN procedente del Tribunal de Primera Instancia, Sala de Superior de Caguas*<br><br>Casos Núm.: CG2022CV03305<br><br>Sobre: ACCIDENTE ES ESTABLECIMIENTO COMERCIAL; DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y el Juez Robles Adorno.[1]

Robles Adorno, Juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 26 de noviembre de 2025.

El 21 de julio de 2025, Altitude Costa, LLC h/n/c Altitude Trampoline Park (Altitude o parte apelante), presentó ante nos un recurso de *Apelaci[ó]n* en el que solicitó que revoquemos una *Sentencia* emitida el 3 de junio de 2025, notificada el 4 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario).[2] En el aludido dictamen, el foro primario declaró Con Lugar la *Demanda* por daños y perjuicios presentada por la señora Keira Rivera Santiago (señora Rivera Santiago), por sí y en representación de los menores J.C.F.R. y C.J.F.R., y la señora Diana Santiago Rivera (señora Santiago Rivera) (en conjunto, parte

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución de la Jueza Romero García.
[2] Entrada Núm. 58 del caso CG2022CV03305 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

apelada),[3] y condenó a Altitude al pago de una suma global de $97,000.00.

Por los fundamentos que exponemos a continuación, confirmamos el dictamen apelado.

## I.

El caso de marras tiene su inicio el 29 de septiembre de 2022, cuando la parte apelada presentó una *Demanda* en contra de la parte apelante por daños y perjuicios.[4] En síntesis, alegó que, el 2 de octubre de 2021, el menor J.C.F.R., junto con su madre, la señora Rivera Santiago, y su hermano, el menor C.J.F.R., acudieron al parque de trampolines que opera la compañía Altitude. Arguyó que, el menor J.C.F.R. utilizó una atracción con dos (2) brazos de metal giratorios cuando, uno de estos, lo impactó en el área del muslo izquierdo. A raíz de ello, el menor J.C.F.R., cuya edad era de siete (7) años a la fecha del accidente, fue trasladado a Centro Médico en Río Piedras, donde le diagnosticaron una fractura en el fémur.

Igualmente, indicó que, el 4 de octubre de 2021, el menor J.C.F.R. fue sometido por primera vez a una cirugía mediante la cual le fue colocada una placa y siete (7) tornillos en su pierna izquierda. Consecuentemente, el menor usó una silla de ruedas por dos (2) meses, y muletas por varias semanas y, por tanto, no pudo continuar con sus estudios escolares durante dicho lapso. Posteriormente, el 22 de agosto de 2022, el menor fue sometido a una segunda cirugía, por la cual se ausentó a sus clases por dos (2) semanas.

Así pues, arguyó que el accidente se debió a la negligencia de la parte apelante en el manejo y operación de la atracción que provocó el accidente, por lo que debía responder civilmente. Por

---

[3] Entrada Núm. 1 del caso CG2022CV03305 en el SUMAC.
[4] *Íd.*

ende, solicitó una compensación por los daños y angustias sufridas por el menor J.C.F.R., la señora Rivera Santiago, el menor C.J.F.R. y la señora Santiago Rivera, abuela materna de los menores.

El 29 de noviembre de 2022, la parte apelante presentó una *Contestaci[ó]n a la Demanda* en la que, en su mayoría, negó haber incurrido en la negligencia imputada por la parte apelada. Adujo que la señora Rivera Santiago la relevó de responsabilidad y que esta asumió todo riesgo al permitir que el menor J.C.F.R. utilizara la atracción.[5]

Tras varios incidentes procesales, el 16 de enero de 2024, Altitude interpuso una *Moci[ó]n de Sentencia Sumaria.*[6] En lo pertinente, sostuvo que no existían controversias de hechos toda vez que estas versaban sobre si Altitude fue negligente y si se estableció un nexo causal entre la fractura sufrida y la supuesta negligencia. En adición, argumentó que era de aplicación la doctrina de asunción de riesgo toda vez que la señora Rivera Santiago conocía y asumió los riesgos inherentes de visitar un parque de trampolines. Asimismo, sostuvo que no se contaba con evidencia de que la fractura se debió al impacto del brazo giratorio de la atracción, puesto que fue producto de un mal brinco que culminó en la caída. Por ende, solicitó la disposición sumaria de la causa de acción en su contra.

En respuesta, el 16 de febrero de 2024, la parte apelada presentó una *Oposición a Moción de Sentencia Sumaria.*[7] En síntesis, indicó que el supuesto relevo de responsabilidad fue parte de un contrato de adhesión sobre el cual nuestro ordenamiento jurídico dispone que deben interpretarse liberalmente las cláusulas en favor de la parte que se adhiere y cuyas cláusulas de relevo de responsabilidad son especialmente anulables. Igualmente, rechazó

---

[5] Entrada Núm. 13 del caso CG2022CV03305 en el SUMAC.
[6] Entrada Núm. 31 del caso CG2022CV03305 en el SUMAC.
[7] Entrada Núm. 35 del caso CG2022CV03305 en el SUMAC.

que le fuera impuesta responsabilidad al menor J.C.F.R. y a la señora Rivera Santiago.

Evaluadas ambas posturas, el 1 de marzo de 2024, notificada el 4 de marzo de 2024, el TPI emitió una *Resolución* en la que denegó resolver sumariamente la causa de acción por considerar que aún habia controversia sobre la causa que provocó el accidente y los daños sufridos, así como su valor.[8]

Inconforme, el 19 de marzo de 2024, Altitude presentó una *Moci[ó]n de Reconsideraci[ó]n*,[9] que fue declarada No Ha Lugar por el TPI mediante *Orden* emitida el 10 de mayo de 2024 y notificada el 14 de mayo de 2024.[10]

Así las cosas, y tras varios incidentes procesales, el TPI celebró el juicio en su fondo los días 17, 18 y 20 de diciembre de 2024. Durante la celebración del juicio, la parte apelada presentó los siguientes testigos: la señora Génesis Díaz Osorio, gerente general de Altitude Trampoline Park (señora Díaz Osorio), los menores J.C.F.R. y C.J.F.R., y las señoras Santiago Rivera y Rivera Santiago. Por Altitude compareció como testigo el señor Alejandro Colón Cintrón, empleado del parque de trampolines para la fecha de los hechos, y la señora Díaz Osorio.[11]

---

[8] Entrada Núm. 37 del caso CG2022CV03305 en el SUMAC.

[9] Entrada Núm. 38 del caso CG2022CV03305 en el SUMAC.

[10] Entrada Núm. 43 del caso CG2022CV03305 en el SUMAC.

[11] Asimismo, cabe destacar que se admitió la siguiente prueba documental: **Exhibit 1** (expediente médico del menor J.C.F.R. al 22 de noviembre de 2022); **Exhibit 2** (expediente médico del menor J.C.F.R. al 20 de julio de 2023); **Exhibit 3** (notas de progreso médico del menor J.C.F.R. al 21 de noviembre de 2023); **Exhibit 4** (radiografías y lectura de placas); **Exhibit 5** (certificado de incapacidad temporera del 10 de abril de 2021 al 1 de marzo de 2022); **Exhibit 6** (certificado de incapacidad temporera del 10 de abril de 2021 al 1 de diciembre de 2022); **Exhibit 7** (certificado para regreso a la escuela); **Exhibits 8A-8E** (relevos firmados por la señora Rivera Santiago); **Exhbit 9** (reporte de accidente), todos estipulados. Como prueba de la parte apelada: **Exhibits 1A y 1B** (dibujos realizados por el menor J.C.F.R.); **Exhibits 2A a 2N** (fotografías tomadas por la señora Rivera Santiago); tres (3) radiografías; dos (2) fotografías producidas por la parte apelante y un ofrecimiento de prueba sobre la página de Facebook de Altitude. Como prueba de la parte apelante: **Exhibit 1** (manual de la atracción); **Exhibit 2** (*timecard report*); y **Exhibit 3** (fotografía de la atracción).

Asimismo, una vez la parte apelada sometió su caso, Altitude presentó una moción de desestimación por insuficiencia de prueba que fue declarada No Ha Lugar por el foro primario.

El 3 de junio de 2025, notificada el 4 de junio de 2025, el TPI emitió la *Sentencia* en la que resolvió que Altitude fue responsable de los daños sufridos por la parte apelante.[12] Tras aquilatar la prueba oral y documental presentadas ante sí, el foro primario formuló sesenta y dos (62) determinaciones de hechos. Asimismo, razonó que quedó evidenciada la negligencia de Altitude y esta constituyó la causa próxima de los daños sufridos. Específico que, del manual de instrucciones de la atracción, el cual fue admitido como prueba documental, surge que la edad y destrezas del usuario son factores que el operador de la misma debe tomar en consideración para ajustar la velocidad de la máquina.

Determinó que, el operador de la atracción aumentó su velocidad sin considerar las capacidades del menor J.C.F.R. de manera que éste no pudo brincar a tiempo y, por ende, recibió el impacto del brazo giratorio de la atracción por el que se fracturó su fémur. El foro primario resaltó que la parte apelante no demostró que el menor incumplió con alguna regla sobre la atracción y que el operador de la atracción admitió que el menor cumplió con todas las reglas.

Por otro lado, en cuanto a la valorización de los daños, el TPI consideró cuantías utilizadas en casos similares a los daños sufridos y las actualizó al valor presente. En ese sentido, concedió $75,000.00 por los daños y angustias padecidas por el menor J.C.F.R.; $15,000.00 por las sufridas por la señora Rivera Santiago; $5,000.00 por las soportadas por la señora Santiago Rivera; y, $2,000.00 por las incurridas por el menor C.J.F.R, para una suma total de $97,000.00.

---

[12] Entrada Núm. 58 del caso CG2022CV03305 en el SUMAC.

Insatisfecho, el 19 de junio de 2025, Altitude presentó una *Moci[ó]n de Reconsideraci[ó]n.*[13] Señaló que el TPI excluyó varias determinaciones de hechos, que constaban en la *Resolución* mediante la cual denegó la solicitud de sentencia sumaria,[14] y que el dictamen fue fundamentado en una reconstrucción indebida de la prueba oral. Asimismo, reiteró sus planteamientos en cuanto al relevo de responsabilidad, la falta de nexo causal y la negligencia comparada.

El 24 de junio de 2025, notificada el 26 de junio de 2025, el foro primario emitió una *Resolución* en la que declaró No Ha Lugar la moción de reconsideración.[15] En particular, el TPI indicó lo siguiente:

> La máquina del "Wipeout" requiere de un operador para encenderla, detenerla y aumentar la velocidad y así poder ser utilizada por los visitantes. Es el empleado con su operación quien determina la velocidad y con esto la capacidad de impactar un niño y causar un daño. A diferencia de otras atracciones donde no requiere la interacción de empleados de Altitude para ser utilizadas, donde los niños se podrían lastimar *motu proprio* y el relevo de responsabilidad entraría en efecto. El relevo de responsabilidad no puede, a *priori,* descartar acciones culposas y/o negligentes de los empleados causadas luego de la firma del mismo.
>
> En cuanto a las determinaciones de hechos estipuladas y evaluadas, no alteran la determinación final.[16]

Inconforme, el 21 de julio de 2025, la parte apelante interpuso ante nos un recurso de *Apelación* y señala al TPI por la comisión de los siguientes errores:

> Primer error: El TPI abusó de discreci[ó]n al no desestimar la demanda por insuficiencia de la prueba bajo la Regla 39.2(C) de Procedimiento Civil.
>
> Segundo error: Cometi[ó] error manifiesto el TPI al concluir que Altitude fue negligente y, de haberlo sido, no haber aplicado la defensa de la negligencia comparada.
>
> Tercero error: Err[ó] el TPI en su valoraci[ó]n de los daños.

En atención a nuestra *Resolución*, el 19 de septiembre de 2025, Altitude presentó una *Moci[ó]n Sometiendo Transcripciones*

---

[13] Entrada Núm. 61 del caso CG2022CV03305 en el SUMAC.
[14] *Véase*, Entrada Núm. 37 del caso CG2022CV03305 en el SUMAC.
[15] Entrada Núm. 64 del caso CG2022CV03305 en el SUMAC.
[16] *Íd.,* (bastardillas en el original).

*Estipuladas.* Por otro lado, el 20 de octubre de 2025, la parte apelada compareció mediante un *Alegato en Oposición a la Apelación.* Ese mismo día, la parte apelante interpuso un *Alegato Suplementario* y, tras varios incidentes, el 10 de noviembre de 2025, la parte apelada presentó una *Oposición a Alegato Suplementario Presentado por la Parte Apelante (Ent. #9 TA).*

Con el beneficio de la comparecencia de ambas partes, la totalidad del expediente ante nos, así como la transcripción de la prueba oral, procedemos a resolver el asunto ante nuestra consideración.

**II.**

**A.**

Una de las fuentes de las obligaciones surge cuando los actos y las omisiones en los que intervenga cualquier género de culpa o negligencia, está obligado a reparar el daño causado. Código Civil de Puerto Rico, 31 LPRA sec. 5141. El Art. 1536 del Código Civil de Puerto Rico, *supra* sec. 10801, establece que la persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo. La culpa o negligencia consiste en "la falta de debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *López v. Porrata Doria,* 169 DPR 135, 151 (2006); *Toro Aponte v. ELA,* 142 DPR 464, 473 (1997). Ciertamente, "el deber de previsión *no* se extiende a todo peligro imaginable que pueda amenazar la seguridad de las personas; *la norma de responsabilidad es que el riesgo que debe preverse debe estar basado en probabilidades y no en meras posibilidades." López v. Porrata Doria, supra,* págs. 164-165 (bastardillas en el original).

Para que prospere una acción de daños y perjuicios, el reclamante debe establecer: (1) la existencia de un daño real; (2) el

nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022); *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria, supra*, pág. 150. La culpa o negligencia consiste en la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758, 768 (2023). Véase, además, *Pérez Hernández v. Lares Medical Center, Inc., supra*, págs. 976–977; *López v. Porrata Doria, supra*, pág. 151; *Toro Aponte v. ELA, supra*, pág. 473.

Ahora bien, entre el acto culposo y el daño sufrido debe existir un nexo causal adecuado. *Pérez Hernández v. Lares Medical Center, Inc., supra*, pág. 977. El nexo causal adecuado no es "causa de toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general". *Pérez Hernández v. Lares Medical Center, Inc., supra*, págs. 976-977.

Así pues, una vez se imponga responsabilidad conforme a la normativa jurídica pormenorizada, se resarce al damnificado con un valor económico al daño sufrido. *Mena Pamias v. Jiménez Meléndez, supra*, pág. 769 (citando a *García Pagán v. Shiley Caribbean, etc.*, 122 DPR 193, 206 (1988)).

El Artículo 1545 del Código Civil, *supra* sec. 10810, dispone que "la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización en proporción al grado de tal imprudencia." En ese sentido, nuestro ordenamiento jurídico reconoce la doctrina de negligencia comparada. Dicha doctrina es, a su vez, una de las dos (2) acepciones de la doctrina de asunción de riesgo. *Soto v. Tropigas de*

*PR*, 117 DPR 863, 866 (1986); *Viñas v. Pueblo Supermarket,* 86 DPR 33, 37 (1962).

Por lo general, la asunción de riesgo implica que el legitimado activo en una acción sobre daños y perjuicios, expresa o implícitamente, consintió a exponerse a sufrir daños como consecuencia de un riesgo creado por el legitimado pasivo o demandado y, por ende, queda impedido de recobrar los daños sufridos. *Viñas v. Pueblo Supermarket, supra,* pág. 37.

Ahora bien, la negligencia comparada, ciertamente, no derrota una causa de acción de daños y perjuicios, sino que considera el grado de negligencia del perjudicado a los fines de reducir su indemnización.

En ese sentido, cuando se concilian la concurrencia de culpas y la asunción de riesgo con la causa adecuada, si "es evidente la desproporción entre culpas causantes de un daño, la mayor absorbe totalmente la otra y excluye la aplicación de la norma de negligencia comparada." *Cárdenas Mazán v. Rodríguez Rodríguez,* 125 DPR 702, 710-711 (1990).

**B.**

Es sabido que el foro primario es "el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en mejor posición de emitir un juicio sobre la valorización de los daños". *Mena Pamias v. Jiménez Meléndez, supra,* pág. 774; *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490-491 (2016); *Rodríguez et al. v. Hospital et al.,* 186 DPR 889 (2012); *Herrera, Rivera v. SLG Ramírez-Vicéns,* 179 DPR 774, 785 (2010).

Cónsono con lo anterior, la valorización de los daños descansa en elementos subjetivos y especulativos que dependen del juzgador de los hechos, motivado por un sentido de justicia y conciencia humana. *Mena Pamias v. Jiménez Meléndez, supra,* pág. 769; *Santiago Montañez v. Fresenius Medical, supra,* pág. 488; *Herrera,*

*Rivera v. SLG Ramírez-Vicéns, supra*, pág. 785. En ese sentido, el tribunal debe considerar, en adición a la prueba desfilada, las indemnizaciones concedidas en casos anteriores, ajustarlas a su valor presente y las circunstancias particulares del caso ante sí, teniendo presente que no todos los casos son iguales y que la experiencia humana ante acontecimientos similares puede variar significativamente. *Mena Pamias v. Jiménez Meléndez, supra*, pág. 769; *Santiago Montañez v. Fresenius Medical, supra*, págs. 491-497; *Herrera, Rivera v. SLG Ramírez-Vicéns, supra*, pág. 786.

Es por ello que los foros revisores no debemos intervenir con las determinaciones de hechos de los foros de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, consecuentemente, abuso de discreción, o cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Mena Pamias v. Jiménez Meléndez, supra*, pág. 774; *Santiago Montañez v. Fresenius Medical, supra*, pág. 490; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013).

**C.**

Las Reglas de Procedimiento Civil, 32 LPRA Ap. V, proveen para que la parte demandada, una vez la parte demandante culmina su desfile de prueba, mueva al Tribunal de Primera Instancia a que desestime la demanda por insuficiencia de prueba. En específico, la Regla 39.2 (c) de Procedimiento Civil, *supra*, dispone, en lo pertinente, lo siguiente:

> Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte

indispensable, tienen el efecto de una adjudicación en los méritos.

Sobre la referida regla, el Tribunal Supremo de Puerto Rico ha indicado que "[e]n una moción al amparo de la Regla 39.2(c), conocida como una *moción contra la prueba o non-suit*, el tribunal está autorizado, luego de que la parte demandante presente la prueba, a aquilatarla y a formular su apreciación de los hechos, según la credibilidad que le merezca la evidencia." *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011) (bastardillas en el original); *Romero Arroyo y otros v. ELA*, 139 DPR 576, 579 (1995); *Roselló Cruz v. García*, 116 DPR 511, 520 (1985). No obstante, el Máximo Foro ha señalado que la facultad provista por la antedicha regla "se debe ejercitar después de un escrutinio sereno y cuidadoso de la prueba." *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 916; *Romero Arroyo y otros v. ELA, supra*, pág. 579.

Asimismo, "[e]n caso de duda, se debe requerir al demandado que presente su caso." *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 916; *Roselló Cruz v. García, supra*, pág. 520. En adición, cabe precisar que le "corresponde al tribunal determinar si la prueba que presentó la parte demandante es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción." *Rivera Figueroa v. The Fuller Brush Co., supra*, pág. 916.

Finalmente, la determinación de conceder o no una moción de *non-suit*, estará sujeta a la apreciación de la evidencia que se presente. *Íd.*

**D.**

Cónsono con lo anterior, es sabido que los tribunales apelativos actúan como foros revisores. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Este Tribunal de Apelaciones tiene como tarea principal aplicar el derecho a los hechos particulares de cada caso. *Íd.* Dicha función, está cimentada en que el Tribunal de Primera Instancia haya desarrollado un expediente completo que

incluya los hechos que haya determinado como ciertos ante la prueba que se haya ventilado. *Íd.* Como Tribunal de Apelaciones, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos la credibilidad y, tampoco esbozamos determinaciones de hechos. *Íd.*

Sin embargo, las conclusiones de derecho son revisables en su totalidad por el Tribunal de Apelaciones. *Íd.* Ante ello, los foros revisores no intervendrán con las determinaciones de hechos coaligadas por el Tribunal de Primera Instancia, la apreciación sobre credibilidad y valor probatorio de la prueba presentada en sala. *Íd.*, pág. 771.

Como excepción, en caso de que la actuación del juzgador de los hechos medió pasión, prejuicio, parcialidad o error manifiesto, este Tribunal de Apelaciones puede descartar las determinaciones de los hechos. *Íd.*; *Pueblo v. Millán Pacheco*, 182 DPR 595, 642 (2011). El Tribunal Supremo ha resuelto que, "si de un análisis de la totalidad de la evidencia este Tribunal queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas". *Dávila Nieves v. Meléndez Marín, supra*, pág. 772 (citando a *Abudo Servera v. ATPR*, 105 DPR 728, 731 (1977)). Ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos evaluar si el juez o la jueza cumplió su función judicial de adjudicar la controversia específica conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos. *Dávila Nieves v. Meléndez Marín, supra*, pág. 777.

### III.

En el presente caso, Altitude señala que el foro primario incidió al imputarle responsabilidad por los daños sufridos por la

parte apelada. En esa línea, cuestiona que el TPI no haya concedido su moción de desestimación por insuficiencia de prueba. Asimismo, arguye que el foro primario se equivocó al no aplicar la doctrina de negligencia comparada, así como en su valorización de los daños concedidos.

Por estar relacionados los señalamientos de error entre sí, discutiremos los señalamientos de error conjuntamente.

De entrada, de un análisis de la prueba documental ofrecida por la parte apelada durante el juicio, así como de la transcripción de los testimonios vertidos durante su turno probatorio, es forzoso concluir que el TPI, en el sano ejercicio de su discreción, y sujeto a los criterios de las Reglas de Procedimiento Civil, *supra*, no se equivocó al denegar la solicitud de desestimación por insuficiencia de la prueba.

Particularmente, Altitude erradamente sostiene que procedía la desestimación bajo la moción de *non-suit* dado que el accidente, según narrado por el menor, era fácticamente imposible ya que, si el empleado de Altitude abandonó la atracción luego de encenderla, esta no podía haber aumentado la velocidad. Asimismo, alegó que el menor no supo explicar cómo el brazo giratorio pudo golpearlo en el muslo izquierdo si giraba en contra de las manecillas del reloj. A raíz de ello, arguye que el TPI lo obligó a presentar prueba cuando, conforme a las Reglas de Evidencia, 32 LPRA Ap.V, le competía a la parte demandante probar los hechos.

Como vimos, para que un tribunal pueda conceder una moción de desestimación bajo la Regla 39.2 (c) de Procedimiento Civil, *supra*, **debe estar plenamente convencido de que una parte demandante no tiene oportunidad de prevalecer en su causa de acción**. *Lebrón v. Díaz*, 166 DPR 89, 94 (2005). Más aún, "[s]i la prueba presentada por dicha parte tiende a demostrar que bajo alguna circunstancia ésta podría prevalecer, entonces la duda que

surge del testimonio del demandante requiere que el demandado presente su caso, lo que dará al tribunal una visión más completa de los hechos." *Íd.*, (cita depurada) (citando a *Colombani v. Gob. Municipal de Bayamón*, 100 DPR 120, 122-123 (1971)). Siendo así, la determinación que realice un foro primario sobre una moción de *non-suit* va atada a la apreciación que le merezca la prueba que se desfiló ante sí. A esos fines, si el TPI colige que la parte demandante presentó evidencia que *prima facie* sostenga sus alegaciones, debe concederle a la parte demandada la oportunidad de refutar la causa de acción en su contra. Nótese que ello no implica que el peso de la prueba, según dispuesto por la Regla 110 (b) de Evidencia, *supra*,[17] es de ninguna manera variado, como lo plantea Altitude.

En el presente caso, la denegatoria de la solicitud de desestimación por insuficiencia de prueba no implicó que la parte apelada fue enajenada de su obligación probatoria. Más bien, y según surge de la transcripción de la prueba oral, el foro primario razonó procedente la continuación del juicio en sus méritos para obtener una versión de los hechos más completa. Con ello, según surge de la transcripción, parte de la determinación del tribunal fue, con el propósito de ponderar la aplicación de las defensas planteadas por la parte apelante para rechazar la responsabilidad. En específico, el TPI indicó lo siguiente:

> [E]l Tribunal está claro en cuanto a la funcionalidad y operación del parque y la capacidad. La asunción de riesgo no... hay ciertos tipos de... no es la totalidad. Estamos dentro de una máquina que no es una máquina... no es un trampolín inerte, sino que requiere la operación de alguien, y esa operación va a depender de quiénes están allí, que el aumento o disminución de velocidad depende de alguien. Así que, ciertamente, tuvo que haber una intervención de alguien, o empleado de trampolín, en el funcionamiento de la máquina. No es como que estás en un trampolín solo. El nene, dentro de sus capacidades o no brincó, cayó mal y entonces, este, se exceptúan, verdad, estas normas de daños, ¿verdad? Los relevos de responsabilidad. Así que, en

---

[17] La referida regla dispone que "[l]a obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia."

esta etapa de los procedimientos vamos a declarar No Ha Lugar la moción al amparo de la Regla 39.2.[18]

En ese sentido, un análisis del expediente ante nos refleja que el TPI no se apartó de la norma esbozada al denegar la solicitud de desestimación bajo la moción de *non-suit* y, por ende, el error señalado no se cometió.

Por otro lado, la parte apelante cuestiona cómo el foro primario evaluó la prueba ante su consideración. Esta Curia concurre con la apreciación del TPI de que en el presente caso se satisfizo lo necesario para imputarle responsabilidad a la parte apelante. Veamos.

A tenor con la normativa jurídica, para que prospere una causa de acción de responsabilidad civil extracontractual al amparo del Artículo 1536 del Código Civil, *supra*, se debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión cual tiene que ser culposo o negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, *supra*; *Pérez Hernández v. Lares Medical Center, Inc.*, *supra*, pág. 976; *López v. Porrata Doria*, *supra*, pág. 150. En el presente caso, no hay duda de la existencia de daños sufridos y su relación, o nexo causal, con una intervención por parte de Altitude.

Sin embargo, la prueba presentada ante nos es cónsona con la determinación del foro primario. En lo pertinente, el TPI entendió que el accidente que resultó en la fractura del menor J.C.F.R. se debió a que el operador de la atracción aumentó paulatinamente la velocidad de la misma, sin considerar las capacidades del menor. Ello, también surge del testimonio del menor J.C.F.R. y de su hermano, el menor C.J.F.R., quien igualmente utilizaba la atracción al momento del accidente, y quienes testificaron que la velocidad de la atracción iba aumentando.

---

[18] Transcripción de la prueba oral (TPO), vista de 20 de diciembre de 2024, págs. 71 y 72, líneas 15-25 y 1-8.

Así pues, no surge del expediente que Altitude haya impugnado satisfactoriamente la prueba sobre la negligencia y responsabilidad imputadas en su contra. De hecho, resalta el testimonio del operador de la atracción, quien declaró que el menor J.C.F.R. cumplió con todas las reglas establecidas por Altitude para la atracción.[19]

Asimismo, cabe destacar que el testimonio de la gerente del parque quien declaró que no conocía si la atracción tenía restricciones de uso, nunca había leído su manual de operación ni recibió instrucciones sobre el uso de dicha atracción.[20]

De igual forma, surge del manual de instrucciones de la atracción, así como del testimonio vertido en sala, que la velocidad a la que gira la atracción depende de quien la opera.

Todo lo anterior demuestra el grado de negligencia suficiente para imputarle responsabilidad a la parte apelante por el accidente ocurrido.

Ante este cuadro, la parte apelante aún insiste en que la señora Rivera Santiago contribuyó a la producción de las angustias mentales que sufrió a causa del accidente de su hijo y, por ende, correspondía reducir su indemnización.

En nuestra segunda parte pormenorizamos que, la doctrina de negligencia comparada tiene el efecto de atenuar la responsabilidad del legitimado pasivo con relación a la contribución del legitimado activo en la producción de sus propios daños. *Colón Santos v. Coop. Seg. Mult. PR*, 173 DPR 170, 178 (2008).

Sin embargo, no nos persuaden los planteamientos de que la visita al parque de trampolines ni el uso de la atracción por el menor perjudicado, constituyan infracciones al deber de cuidado por el cual se le deba reducir la indemnización a la señora Rivera Santiago.

---

[19] TPO, vista de 20 de diciembre de 2024, págs. 125 y 126, líneas 11-25 y 1-24.
[20] *Íd.*, vista de 17 de diciembre de 2024, pág. 23, líneas 2-16.

Es meritorio señalar que, el deber de anticipar y prever los daños no se extiende a todo riesgo posible ni imaginable. *Montalvo v. Cruz,* 144 DPR 748, 756 (1998). Mucho menos cuando el riesgo no es uno previsible y aparente.

Es decir, si bien es posible que una persona que visite un parque de atracciones pueda sufrir un accidente, la visita no hace dicho riesgo uno probable. Menos aún es la probabilidad de que un tercero sufra angustias mentales por el accidente de otro al visitar un parque de trampolines.

Por último, en cuanto a la valorización de daños, tal como citamos, "es el foro primario el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en mejor posición de emitir un juicio sobre la valorización de los daños*". Mena Pamias v. Jiménez Meléndez, supra,* pág. 774. Es por ello que los foros revisores no debemos intervenir con las determinaciones de hechos de los foros de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, consecuentemente, abuso de discreción, o cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Íd.*

En el presente caso, ninguno de los referidos factores se encuentra presente, por lo que no procede que intervengamos con las cuantías concedidas por el TPI. Tras un análisis del dictamen apelado refleja que el foro primario correctamente basó sus determinaciones en la prueba presentada, jurisprudencia en donde se concedieron indemnizaciones por daños similares, y ajustó las cuantías al valor presente. *Íd.*, pág. 769; *Santiago Montañez v. Fresenius Medical, supra*, págs. 491-497.

A la luz de los fundamentos expuestos, concluimos que los errores señalados no se cometieron, por lo que procede confirmar el dictamen apelado.

**IV.**

Por los fundamentos expuestos anteriormente, confirmamos la *Sentencia* apelada.

El Juez Sánchez Ramos disiente por considerar que no hubo prueba que sustente la teoría de que el accidente ocurrió por razón de que los brazos de la máquina giraban a una velocidad inadecuada a la luz de la edad de los participantes. El simple hecho de que ocurriese un accidente no es suficiente para inferir que medió negligencia por la parte demandada.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                                        Lcda. Lilia M. Oquendo Solís
                                    Secretaria del Tribunal de Apelaciones